NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

No. 72–2233.

United States Court of Appeals,
District of Columbia Circuit.

May 19, 1975.

Rehearing Denied June 24, 1975.

**1352**

David Schoenbrod, New York City, was on the pleadings for petitioners.

Edward J. Shawaker, Washington, D. C., was on the pleadings for respondent.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

Opinion for the Court filed by Chief Judge BAZELON.

Opinion filed by Circuit Judge J. SKELLY WRIGHT, concurring and dissenting.

BAZELON, Chief Judge:

Natural Resources Defense Council, Inc., (NRDC) brought this action following the publication of final regulations by EPA pursuant to section 211 of the Clean Air Act, as amended.[1] As initially proposed,[2] the regulations had required gasoline retailers to carry at least one grade of unleaded gasoline and had also laid down standards governing the use of lead additives in all grades of gasoline. In final form, they contained only the lead-free brand requirement.[3] Before briefs were filed, NRDC filed a Motion for Prehearing Conference, Summary Reversal, or Expedited Hearing, urging the immediate need for across-the-board controls on lead additives. This motion was denied without prejudice to its renewal if EPA did not take final action in deciding whether to promulgate such controls within 60 days. Subsequent delays by the agency resulted in an order by this court on October 29, 1973, directing EPA to reach a final decision within thirty days. On November 28, 1973, EPA informed the court that it had decided to issue the regulations in

---

[1]. 42 U.S.C. § 1857f–6c (1970):

Control or prohibition of offending fuels and fuel additives.

(c) (1) The Administrator may, from time to time on the basis of information obtained under subsection (b) of this section or other information available to him, by regulation, control or prohibit the manufacture, introduction into commerce, offering for sale, or sale of any fuel or fuel additive for use in a motor vehicle or motor vehicle engine (A) if any emission products of such fuel or fuel additive will endanger the public health or welfare, or (B) if emission products of such fuel or fuel additive will impair to a significant degree the performance of any emission control device or system which is in general use, or which the Administrator finds has been developed to a point where in a reasonable time it would be in general use were such regulation to be promulgated.

[2]. 37 Fed.Reg. 3882 (1972).

[3]. 38 Fed.Reg. 1254 (1973).

question.[4] NRDC now petitions to withdraw its appeal and for an award of costs and attorneys' fees against EPA under section 304(d) of the Act.[5]

The principle of sovereign immunity precludes the award of costs and fees against the United States "in the absence of a statute directly authorizing it . . . ."[6] In 1966 Congress revamped 28 U.S.C. § 2412 to provide:

> Except as otherwise specifically provided by statute, a judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity . . . .

But "fees and expenses of attorneys" were specifically excluded from the "costs" which courts were authorized to award.[7] This limitation seems, on its face, inconsistent with the broad principle which led to the revision of section 2412 in the first place: "It is fundamental that the law should be uniform in its application."[8] It also presents a significant impediment to the implementation of the "private-attorney-general" theory, as federal agencies are defendants in a large percentage of public interest cases.[9] Having registered these concerns, however, we are left to determine whether Congress has made a specific grant of attorneys' fees covering this case.

## I.

Section 304 of the Clean Air Act Amendments authorizes the award of costs and attorneys' fees "whenever the court determines [that] such [an] award is appropriate." This authorization goes specifically to suits brought under section 304(a), which recognizes actions against the Administrator "where there is alleged a failure . . . to perform any act or duty under this chapter which is not discretionary"[10] and grants the district courts jurisdiction to hear these suits and issue appropriate relief. NRDC's action, however, was initiated in this court under section 307(b),[11] which directs petitions for review of specified actions by the Administrator to the circuit courts of appeals. EPA urges us to conclude, therefore, that the provisions of section 304(d) are inapplicable and that in the absence of any other express authorization for the award of fees, NRDC's petition must be rejected.

---

4. These regulations appear at 38 Fed.Reg. 33734 (1973). Their validity was the subject of a panel opinion issued on January 28, 1975, in Ethyl Corporation v. EPA, No. 73–2205 (D.C.Cir.). That opinion, which set aside the regulations as unjustified under the standards set forth by the Act and the information then available to the Administrator, has since been vacated, and the case is scheduled for rehearing en banc later this spring.

5. 42 U.S.C. § 1857h–2(d). The full text of § 304, 42 U.S.C. § 1857h–2, appears in Appendix, *infra*.

6. United States v. Chemical Foundation, Inc., 272 U.S. 1, 20, 47 S.Ct. 1, 8, 71 L.Ed. 131 (1926).

7. *See* Pyramid Lake Paiute Tribe of Indians v. Morton, 163 U.S.App.D.C. 90, 499 F.2d 1095 (1974); Cassata v. Federal Savings & Loan Corp., 445 F.2d 122, 125 (7th Cir. 1971); NRDC v. EPA, 484 F.2d 1331, 1334–35 (1st Cir. 1973).

8. H.R.Rep.No.89–1535, 89th Cong., 2d Sess. 3 (1966).

A rather dramatic instance of the discriminatory impact of § 2412 occurred in Wilderness Society, Inc. v. Morton, 161 U.S.App.D.C. 446, 495 F.2d 1026, 1036 (On Bill of Costs and Fees), cert. granted, 419 U.S. 823, 95 S.Ct. 39, 42 L.Ed.2d 47 (1974) (argued Jan. 22, 1975), in which the court split the total fees requested by appellants in two, assessing one-half against Alyeska, the private intervenor, and none against the Government. The result, of course, was that the Wilderness Society bore the other one-half, although it was found to have vindicated an important public policy in restraining government officials within the specific limits of their statutory mandates.

9. *See* Court Awarded Attorneys' Fees and Equal Access to the Courts, 122 U.Pa.L.Rev. 636, 679 & n. 252 (1974).

10. 42 U.S.C. § 1857h–2(a).

11. 42 U.S.C. § 1857h–5(b). The full text of § 307 appears in Appendix, *infra*.

The same question was considered by the First Circuit in NRDC v. EPA.[12] In that case, the court determined that section 304(a) provided the authorization for suits against the Administrator, whether brought in district court or in an appeals court under section 307. Section 307 simply directed that certain actions authorized by section 304(a) be brought in one forum rather than the other. NRDC's appeal was thus an action pursuant to section 304(a) and section 304(d) was applicable. Reluctantly, we find ourselves unable to follow the path by which the First Circuit reached this result.

Section 307(b) originally appeared as section 308(a) of Senate Bill 4358, as reported by the Senate Committee on Public Works.[13] That section stated that "[a]ny interested person may file a petition against the Secretary for review" of any national standard, goal or prohibition in the United States Court of Appeals for the District of Columbia. Attacks on the adoption or promulgation of state implementation plans were directed to the United States court of appeals for the "appropriate circuit."

Appeals were required to be taken within thirty days of the Administrator's action. In the Joint Conference Committee the language was changed from "[a]ny interested person may file a petition . . . for review" to "[a] petition for review may be filed." [14] In all other material respects it remained the same through its enactment.

In framing section 307(b), the Senate Committee was aware that under decisions such as Barlow v. Collins [15] and Abbott Laboratories v. Gardner [16] the actions listed would probably be held reviewable under the Administrative Procedure Act (APA) in the absence of a statement of Congressional intent to the contrary.[17] Finding that "precluding review does not appear to be warranted or desirable," the Committee provided for review subject to the constraints which it considered necessary to preserve the "even and consistent national application" of standards and to "maintain the integrity of the time sequences of the Act." [18] After conference, section 307(b) was again characterized as a provision which "permits review." [19] Against this background, we find it difficult to say,

---

**12.** *Supra* note 7.

**13.** S. 4358, 91st Cong., 2d Sess. § 308(a) (1970), reprinted in Environmental Policy Division of the Congressional Reference Service, A Legislative History of the Clean Air Act Amendments of 1970, Vol. I, at 531, 619 (1974) [hereinafter cited as Legislative History].

**14.** The deletion of "interested person" is not discussed in the Conference Report or elsewhere in the legislative history; its import is therefore conjectural. The First Circuit speculated that it revealed Congress' intent that the "standing provisions of § 304(a) . . . be applicable to § 307 suits . . .." 484 F.2d at 1336–37. This reading was implicitly rejected by the Tenth Circuit in NRDC v. EPA, 481 F.2d 116 (1973), which refused to grant standing under the "any person" language of § 304 to petitioners seeking to bring an action in circuit court under § 307. Our examination of § 307's origins, *see* text accompanying notes 13–20 *infra*, suggests that the omission reflects nothing more than a determination to let standing in § 307 suits be controlled by the Administrative Procedure Act, which allows final agency actions to be challenged by "a person . . . adversely affected or ag-

grieved by agency action." 5 U.S.C. § 702. *See* Bolbach, The Courts and the Clean Air Act, 5 BNA Env.Rep. [Current Affairs], Monograph 19 (1974).

**15.** 397 U.S. 159, 167, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

**16.** 387 U.S. 136, 140–41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**17.** *See* S.Rep.No.91–1196, 91st Cong., 2d Sess 40–41 (1970), reprinted in Legislative History, *supra* note 13, Vol. I, at 440–41.

**18.** *Id.* 41, reprinted in Legislative History, *supra*, note 13, Vol. I, at 441.

**19.** Summary of the Provisions of Conference Agreement on the Clean Air Act Amendments of 1970, Legislative History, *supra* note 13, Vol. I, at 131. This summary was introduced into the record by Senator Muskie, Chairman of the Subcommittee on Air and Water Pollution of the Senate Public Works Committee and one of the conferees. Senator Muskie presented the compromise legislation to the Senate along with the Conference Committee's report. *See* Legislative History, *supra* note 13, Vol. I, at 123.

at least without clearer affirmative support than has been offered,[20] that the "authorization" for section 307 appeals derives from elsewhere in the Act, or that section 307 looks elsewhere in the Act for its terms and conditions.

The independence of sections 307 and 304 is also suggested by the language and history of section 304. Like section 307, this provision originated in the Senate. The Senate Committee's report characterized it as "carefully restricted to actions where violations of standards and regulations or a failure on the part of officials to act are alleged," and its limited scope was stressed again by Senator Muskie in floor debate. Despite these declarations, opponents of the clause urged that the language was broad enough to encompass, inter alia, suits to require the revision or disapproval of implementation plans submitted by the states and the review and revision of emission standards.[21] Perhaps in response to such criticisms, the conference committee altered the provision, which had authorized enforcement actions against the Administrator for failure to exercise "any duty established under this Act," to allow citizens suits only for failure to perform any act or duty which is "not discretionary." Managers for both the House and the Senate stressed the restrictive intent of the new language in floor debate.[22]

Although the major emphasis throughout the development of section 304 was on its role as a vehicle for enforcement of established standards, courts have read it to cover the Administrator's failure to take other steps required of him, such as the promulgation of implementation plans or standards within a specified time.[23] But the language and history do not provide a basis for holding, as a general matter, that section 304 encompasses suits against the Administrator for taking steps alleged to be misguided or uninformed. Review of the Administrator's exercise of judgment, or "discretion," of course, is available under section 307, which establishes *exclusive* jurisdiction in the courts of appeals for actions within its compass.[24] We conclude, contrary to the First Circuit, that sections 304 and 307 contemplate distinct groups of cases.

**20.** In addition to the argument dealt with in note 14 *supra*, the First Circuit relied heavily on a passage from the Conference Report:

The Senate bill inserted a new section 308 in the Act to establish guidelines and specify forums for judicial review of certain actions of the Secretary provided for under the Act and the proposed amendments . . ..

H.R.Rep.No.91–1783, 91st Cong., 2d Sess. 57, Legislative History, *supra* note 13, Vol. I, at 207, U.S.Code Cong. & Admin.News 1970, p. 5389. The court put heavy emphasis on "provided for" which it read as qualifying "judicial review." We think this construction, which was aided by the omission of the phrase "of the Secretary" in the First Circuit's quotation of the passage, is questionable. Certainly when viewed in light of our gleanings from the Senate Report, text accompanying notes 15–20 *supra*, the syntax suggests "actions of the Secretary" as a more likely referent for "provided for" than "judicial review." And the passage purports to be nothing more than a characterization of the section as it appeared in the Senate bill, prior to its consideration and amendment by the Conference Committee.

**21.** *See* Collier, Shannon, Rill & Edwards, Memorandum of Law, Legislative History, *supra* note 13, Vol. I, at 727, 729–30. The analysis in the memorandum is responding to similar language in an earlier version of S. 4358, Committee Print No. 1, 91st Cong., 2d Sess. § 304(a) (1970), Legislative History, *supra* note 13, Vol. I, at 629, 704.

**22.** Legislative History, *supra* note 13, Vol. I, at 112 (Representative Staggers); 147 (Senator Spong).

**23.** *See, e. g.*, Riverside v. Ruckelshaus, 4 BNA Env.Rep.Cas. 1728 (C.D.Calif.1972). *See also* Sierra Club v. Ruckelshaus, 344 F.Supp. 253 (D.D.C.), aff'd on the basis of the district court's opinion, 4 BNA Env.Rep.Cas. 1815 (1972), aff'd by an equally divided court, Fri v. Sierra Club, 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973) (taking jurisdiction over a claim that the Administrator had abdicated his duty in failing to require that state implementation plans provide against significant deterioration of existing air quality). *But see* Anaconda v. Ruckelshaus, 482 F.2d 1301 (10th Cir. 1973).

**24.** *See* Anaconda v. Ruckelshaus, *supra* note 23, at 1304.

Another problem with the view adopted by the First Circuit is simply that the conditions for bringing actions under each section are inconsistent. This point, which is not addressed by the court in NRDC v. EPA, rests on the requirement of section 304(b) that no action may be brought pursuant to section 304(a) prior to sixty days after notification of the Administrator. Section 307 requires that appeals be brought within 30 days of the Administrator's action. NRDC urges that these conflicting requirements must be read functionally. The requirement of section 304(b) has the purpose of allowing the Administrator, and other officials, to rectify inaction.[25] No similar requirement is necessary with regard to suits contemplated under section 307, which covers actions which have already been taken. The notice provisions of section 304(b), NRDC concludes, should not be read as a "stone wall" separating one jurisdiction from the other. We find this argument unconvincing, particularly as it would lead to a rather tortured reading of section 304, whereby a section 307 appeal would be considered an action pursuant to section 304(a) for purposes of subsection (d) but not for purposes of subsection (b).

## II.

■ Having come this far, however, we acknowledge a peculiar and for us somewhat troubling aspect of this case. Although brought under section 307, and properly so, NRDC's appeal also resembles in important respects the class of cases contemplated by section 304(a). This resemblance raises the possibility at least that the suit falls within the intended reach of section 304(d), if not within its literal terms. This possibility was not explored by the parties but is significant enough in our view to warrant a brief discussion.

■ From one point of view, NRDC sought review of "action of the Administrator in promulgating" final regulations which omitted the controls that NRDC thought were immediately necessary.[26] This is the characterization on which our jurisdiction is premised, and it retains validity even though at the time the administrator issued the rules which provoked NRDC's appeal, he continued to consider the promulgation of across-the-board restrictions at some later time. As we said in Environmental Defense Fund, Inc. v. Hardin,[27] the line between action and inaction sometimes disappears, particularly where, as here, the deferral of a ruling involves potentially irreversible consequences for human health.[28] Our jurisdiction over the appeal, as within section 307, is suggested further by the national scope of the regulation involved: as we have indicated,[29]

25. *See, e. g.,* NRDC v. Train, 166 U.S.App.D.C. 312, 510 F.2d 692, 703 (1974) (dealing with an analogous provision of the Water Pollution Control Act Amendments of 1972); Highland Park v. Train, 374 F.Supp. 758, 765–67 (N.D.Ill.1974). NRDC v. Quarles, No. 1629–73 (D.D.C. Feb. 1, 1974).

26. *Compare* Pinkney v. Ohio EPA, 375 F.Supp. 305 (N.D.Ohio 1974) (holding that delay in the promulgation of indirect source regulations is action sufficient to trigger review under § 307), *with* Utah Internat'l v. EPA, 478 F.2d 126 (10th Cir. 1973) ("[A]n order disapproving a state plan is not subject to review, because by the mere act of· disapproval *no* plan is placed into effect . . . .") (emphasis in original).

27. 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970).

28. In *Hardin,* petitioners had requested the Secretary of Agriculture to issue notices of cancellation for all economic poisons containing DDT and to suspend registration for all such products pending the completion of cancellation proceedings. We concluded that the Secretary's silence was equivalent to a denial of EDF's request and was therefore reviewable as a final order. *See* Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971). In *Hardin,* as in this case, there was the possibility that petitioners could have proceeded in district court. We observed, however, that "the availability of that extraordinary remedy [mandamus] for the failure of an officer to perform his statutory duty need not bar statutory appellate review of the failure to act, when exigent circumstances render it equivalent to a final denial of petitioners' request." 428 F.2d at 1098.

29. *See* text accompanying note 18 *supra.*

the designation of this court as the exclusive forum for appeals from standard-setting actions by the Administrator was to ensure uniformity in decisions concerning issues of more than purely local or regional impact.

From another point of view, however, NRDC's suit was directed at the "failure of the Administrator to perform [an] act or duty . . . which is not discretionary . . .," *i. e.*, refusal to promulgate controls which, given the information available to him on the health effects of airborn lead, he had no choice but to promulgate. This characterization may rest on an overly broad reading of what Congress intended by "not discretionary,"[30] but it was seriously advanced by EPA itself in initially disputing the power of this court to hear and decide the case. The agency urged that NRDC was required to proceed in district court under section 304(a).[31]

■ It is the fundamental purpose of section 304(d) to encourage meritorious litigation in furtherance of the goals of the Act. But this formulation does not explain why Congress failed to extend the availability of fees to suits brought under section 307. Perhaps Congress understood that affected industries could be counted on to force review of regulations under the Act, attorneys' fees or no, but that the same concerns would not police the sort of nonregulation ad-

dressed by section 304(a). Private citizens and public interest groups could be expected to perform that task—but only if steps were taken to mitigate the high costs of suits involving complex questions. These considerations suggest that the purpose of section 304(d), even construed in its strictest sense, is well-served by the availability of fees in this case and a small group of section 307 actions like it.

■ We are tempted on this analysis to award fees to NRDC notwithstanding our rejection of the First Circuit's construction of the statute. But to do so would strain the limits of our interpretive function, pressing in a direction contrary to a still vital common law principle. It could also impede the development of clear and workable guidelines for the administration of sections 304 and 307 as the Act's basic jurisdictional grants.[32] We decline to bend the statutory framework to accommodate our good intentions, and leave the matter where it belongs, with Congress.

In addressing the anomalies which our review has suggested, Congress has several options. It may act in a comprehensive way, by enlarging section 2412 to provide equal treatment of the Government and private litigants with regard to fees; or it may work within the confines of the Clean Air Act, by extending the scope of section 304(d); or it may do nothing. One can appreciate EPA's con-

---

30. *See* text accompanying notes 21–24 *supra.*

31. Respondent's Opposition to Plaintiff's Motion for Prehearing Conference, Summary Reversal, or Expedition, at 2–6.

32. Disarray among existing decisions suggests that such guidelines will not be easily arrived at in any event. In Sierra Club v. Ruckelshaus, *supra* note 23, for instance, we affirmed, on the basis of the opinion below, a judgment in which the district court asserted jurisdiction over a claim by environmentalists that the administrator had breached a nondiscretionary duty in failing to require that state implementation plans provide against significant deterioration of existing air quality. Jurisdiction was predicated on § 304(a). *Sierra Club* was cited by a Colorado district court in

assuming jurisdiction over a suit by a mining concern. The company contended that it was entitled to an adjudicatory hearing and an environmental impact statement prior to the promulgation of an implementation plan then under active consideration by the agency. *Anaconda v. Ruckelshaus,* 352 F.Supp. 697 (D.Colo.1972). The Tenth Circuit reversed in Anaconda v. Ruckelshaus, *supra* note 23, holding that § 307 limited "review of an approval or implementation plan" to courts of appeals. The Tenth Circuit further held that it had no jurisdiction over Anaconda's claims because the regulation was "not formalized and final." *Compare* Riverside v. Ruckelshaus, *supra* note 23, with Pinkney v. Ohio EPA, *supra* note 26; Highland Park v. Train, *supra* note 25.

tention that Congress might reasonably hesitate before allowing taxpayers' dollars to go to lawyers for the regulated concerns, whose vested interest in the least regulation has led them in a number of cases to contest orders of the Administrator under section 307. But a more generous provision for fees could be shaped to avoid this result, and a perceivable need does exist. Section 307 actions have been brought by public interest groups as well as businesses, attacking not only delay by the Administrator in promulgating standards and plans, as here, but also the sufficiency of standards and plans which have been approved. These suits have opened the Administrator's actions to judicial scrutiny from a point of view widely divergent from that represented by the regulated interests, and their positions have frequently been upheld.[33] Groups such as NRDC have never been secure financially, and only recently the foundations have indicated their intent to divert their support to projects in other areas.[34] Provision for fees could thus have a strong impact on their continued willingness and ability to pursue section 307 actions. If Congress fails to act, there may come a day soon when EPA's determinations, though frequently attacked because they are too stringent, are only seldom contested because they are not stringent enough.

Leave to withdraw the appeal is granted; in all other respects, petitioner's motion is denied.

Appendix: §§ 304 & 307 of the Clean Air Act Amendments of 1970, 42 U.S.C. §§ 1857h-2 & 1857h-5

§ *1857h-2. Citizen suits.*

*Establishment of right to bring suit.*

(a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be.

*Notice.*

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the vio-

---

**33.** *See, e. g.,* Friends of the Earth v. EPA, 499 F.2d 1118 (2d Cir. 1974) (requiring the Administrator to explain further "his determinations regarding the parking ban strategy, the necessary assurances concerning funding and personnel, and the twenty percent ban on taxicab cruising."); NRDC v. EPA, 494 F.2d 519 (2d Cir. 1974) (requiring "detailed statement" from the Administrator regarding assurances from the state that it has personnel, funding and authority to carry out implementation plan); NRDC v. EPA, 489 F.2d 390 (5th Cir. 1974) (requiring further explanation from the Administrator in support of plan's reliance on dispersion techniques rather than emissions limita-

tions); NRDC v. EPA, 478 F.2d 875 (1st Cir. 1973) (striking down provision for state grant of variances from plan and citing failure of plan to require installation of monitoring equipment).

**34.** McGeorge Bundy, President of the Ford Foundation, which has been the largest supporter of public interest law, stated that "in the next couple of years, public interest law firms . . . [must look] to alternative sources of funds," including court awarded fees. *New York Times* (April 17, 1974).

Petitioner NRDC's Motion for Costs and Attorneys' Fees at 7.

lation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

(2) under subsection (a)(2) of the section prior to 60 days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 1857c–7(c)(1)(B) of this title or an order issued by the Administrator pursuant to section 1857c–3(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

*Venue; intervention by Administrator.*

(c)(1) Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located.

(2) In such action under this section, the Administrator, if not a party, may intervene as a matter of right.

*Award of costs; security.*

(d) The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

*Non-restriction of other rights.*

(e) Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

*Definition.*

(f) For purposes of this section, the term "emission standard or limitation under this chapter" means—

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, or

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive,

which is in effect under this chapter (including a requirement applicable by reason of section 1857f of this title) or under an applicable implementation plan. July 14, 1955, ch. 360, Title III, § 304, as added Dec. 31, 1970, Pub.L. 91–604, § 12(a), 84 Stat. 1706.

## § 1857h–5. Administrative proceedings and judicial review.

(a)(1) [1] In connection with any determination under section 1857c–5(f) or section 1857f–1(b)(5) of this title, or for purposes of obtaining information under section 1857f–1(b)(4) or 1857f–1(c)(4) of this title, the Administrator may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and he may administer oaths. Except for emission data, upon a showing satisfactory to the Administrator by such owner or operator that such papers, books, documents, or information or particular part thereof, if made public, would divulge trade secrets or secret processes of such owner or operator, the Administrator shall consider such record, report, or information or particular portion thereof confidential in accordance with the purposes of section 1905 of Title 18, except that such paper, book, doc-

ument, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter, to persons carrying out the National Academy of Sciences' study and investigation provided for in section 1857f–1(c) of this title, or when relevant in any proceeding under this chapter. Witnesses summoned shall be paid the same fees and mileage that are paid witnesses in the courts of the United States. In case of contumacy or refusal to obey a subpena served upon any person under this subparagraph, the district court of the United States for any district in which such person is found or resides or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Administrator to appear and produce papers, books, and documents before the Administrator, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

(b)(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c–7 of this title, any standard of performance under section 1857c–6 of this title, any standard under section 1857f–1 of this title (other than a standard required to be prescribed under section 1857f–1(b)(1) of this title), any determination under section 1857f–1(b)(5) of this title, any control or prohibition under section 1857f–6c of this title or any standard under section 1857f–9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 of this title or section 1857c–6(d) of this title, may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, or approval, or after such date if such pet-

ition is based solely on grounds arising after such 30th day.

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

(c) In any judicial proceeding in which review is sought of a determination under this chapter required to be made on the record after notice and opportunity for hearing, if any party applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Administrator, in such manner and upon such terms and conditions as to the court may deem proper. The Administrator may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original determination, with the return of such additional evidence. July 14, 1955, c. 360, Title III, § 307, as added Dec. 31, 1970, Pub.L. 91–604, § 12(a), 84 Stat. 1707.

J. SKELLY WRIGHT, Circuit Judge (concurring and dissenting):

While I concur in Part I of the court's opinion and in much of the analysis in Part II, I am forced to dissent from the court's decision to deny attorneys' fees in this case.

Judge Bazelon has well outlined the reasons for and against awarding attorneys' fees to the Natural Resources Defense Council (NRDC). I am persuaded by the reasons for awarding fees. The litigation here at issue, while apparently properly brought before this court under Section 307, 42 U.S.C. § 1857h–5 (1970), could, in my judgment, have been brought in District Court under Section

304, 42 U.S.C. § 1857h–2 (1970), as well. Of course, so far as this motion is concerned the difference is crucial; Section 304 authorizes attorneys' fees while Section 307 does not. I do not think, however, that the congressional purpose in allowing fees under Section 304 should be frustrated where an action, cognizable under Section 304, is brought under Section 307 instead. I think this is particularly so because the courts have been of so little help to litigants attempting to discern the parameters of Sections 304 and 307. While the courts play jurisdictional badminton with these provisions, batting one case back to the District Court under Section 304 while taking another identical one under Section 307, litigants should not be denied substantial rights because of uncertainty created by courts and Congress. *Compare* Sierra Club v. Ruckelshaus, D. D.C., 344 F.Supp. 253, affirmed on the basis of the District Court opinion, 4 BNA Env.Rep. Cas. 1815 (1972), affirmed by an equally divided Court, 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973), *with* Anaconda v. Ruckelshaus, 10 Cir., 482 F.2d 1301 (1973), reversing D. Colo., 352 F.Supp. 697 (1972).

I believe NRDC is an innocent victim of this badminton game. When the evidence before the Administrator proved that lead emissions from automobiles endangered the public health, I believe he had no choice but to regulate those emissions. His failure to perform that nondiscretionary duty created District Court jurisdiction over NRDC's claim under Section 304, while his simultaneous promulgation of related lead regulations created jurisdiction in this court under Section 307. I do not believe NRDC should be penalized for suing under Section 307. Since Congress intended that private citizens bringing such public interest litigation should be rewarded with attorneys' fees and since the law is so unsettled as to which section NRDC should properly have utilized, I would award fees to NRDC. My conclusion that the attorneys' fees provision of Section 304 should be read broadly is buttressed by the impossibility of awarding

fees on other theories. Alyeska Pipeline Service Co. v. Wilderness Society, —— U.S. ——, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Accordingly, I respectfully dissent from the judgment of the court.