**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Russell E. TRAIN, Administrator, Environmental Protection Agency, Respondents.**

**No. 75–1887.**

United States Court of Appeals, District of Columbia Circuit.

April 6, 1976.

Louis P. Robbins, Acting Corp. Counsel, John C. Salyer, III, and Richard G. Wise, Asst. Corp. Counsel, Washington, D.C., were on the motion for petitioner.

Raymond W. Mushal, Dept. of Justice, Counsel, Richard G. Stoll, of Environmental Protection Agency, of Counsel, Washington, D.C., for Russell E. Train.

Before WRIGHT and MacKINNON, Circuit Judges.

PER CURIAM:

The District of Columbia (District) has sought direct review in this Court of the action of the Administrator of the Environmental Protection Agency (Administrator) in entering into and approving a Consent Agreement with the General Services Ad-

ministration (GSA) which altered previously existing compliance schedules for achieving primary ambient air quality standards affecting GSA's Central Heating and Refrigeration Plant and its West Heating Plant. In its Petition for Review filed September 11, 1975, the District asserted that this Court had jurisdiction to hear the appeal pursuant to Section 307(b)(1) of the Clean Air Act.[1] It particularly urged that the Consent Agreement contained "a compliance schedule portion of an implementation plan within the meaning of" Section 110[2] as its predicate for Section 307 jurisdiction. Petition for Review at 2.[3]

On October 7, 1975, EPA filed a motion to dismiss the petition for want of jurisdiction in this Court. After considering the motion, the response thereto and additional papers filed by the parties, a motions panel of this Court, finding that the Court in fact did lack jurisdiction, entered an order on January 26, 1976, granting the motion to dismiss. The District thereafter filed a timely motion for reconsideration of the order, or alternatively for amplification of the Court's reasoning. For the reasons stated herein, we affirm the order of dismissal. We find that the Consent Agreement challenged here is not an action capable of direct review in this Court pursuant to Section 307(b)(1) of the Clean Air Act which is "exclusive in its terms," *Oljato Chapter of Navajo Tribe v. Train*, 169 U.S. App.D.C. 195, 198, 515 F.2d 654, 657 (1975).

## I

The jurisdictional provisions of the Clean Air Act[4] admittedly have been sources of periodic confusion.[5] Therefore, proper disposition of a motion to dismiss for lack of jurisdiction requires precise characterization of the action sought to be reviewed. *cf. Oljato Chapter of Navajo Tribe v. Train, supra.* In situations, such as presented here, where the statutory grant of jurisdiction—exclusive in its terms—delineates certain factual circumstances which give rise to direct review in a court of appeals, it is necessary for a court to determine if the action sought to be reviewed reasonably can be said to be embraced by the statute. We believe that a Consent Agreement executed by two agencies of the Executive Branch is not among the actions determined by Congress to be reviewable in the first instance in a court of appeals. Congress did not foresee the development and use of such a mechanism when it enacted Section 307 of the Clean Air Act. Rather, the Consent Agreement mechanism appears to be a post-hoc regulatory response to perceived, but unsettled, problems of federalism engendered by the complexities of the Act.

The Consent Agreement procedure is essentially an outgrowth of the on-going dispute between the states and the federal government over whether federal agencies are required to abide by both state substantive *and* procedural requirements for pollution abatement.[6] As presently relevant, the

1. 42 U.S.C. § 1857h–5(b)(1). That section provides:

    "A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 [section 110] of this title or section 1857c–6(d) [section 111(d)] of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) [section 119(c)(2)(A), (B), or (C)] of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit."

2. 42 U.S.C. § 1857c–5.

3. An implementation plan is a plan designed to assure compliance with a national primary or secondary ambient air quality standard. Such a plan must include, *inter alia*,

    "emission limitations, *schedules, and timetables for compliance with such limitations,* and such other measures as may be necessary to insure attainment and maintenance of

such primary or secondary standard . . . ." Section 110(a)(2)(B) of the Act, 42 U.S.C. § 1857c–5(a)(2)(B). (Emphasis added)

4. Section 307(b), 42 U.S.C. § 1857h–5(b), and section 304, 42 U.S.C. § 1857h–2.

5. *See Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 168 U.S. App.D.C. 111, 121, 512 F.2d 1351, 1361 (1975) (Wright, J., concurring and dissenting), where it is noted that "Courts play jurisdictional badminton with those provisions, batting one case back to the District Court under Section 304 while taking another identical one under Section 307 . . . .")

6. *Compare Kentucky v. Ruckelshaus*, 497 F.2d 1172 (6th Cir. 1974), *cert. granted sub nom., Hancock v. Train*, 420 U.S. 971, 95 S.Ct. 1390, 43 L.Ed.2d 650 (1975) (substantive only), *with People of St. of Calif., etc. v. Environmental Protection Agency*, 511 F.2d 963 (9th Cir.), *cert.*

dispute has arisen over the language contained in Section 118 of the Clean Air Act[7] and the construction given that language by the Executive Branch.[8] The President has required heads of federal agencies to cooperate with the Administrator and with state environmental agencies in the development of pollution abatement plans and of schedules for meeting applicable standards.[9] He has additionally directed the Administrator to mediate any conflicts which might arise and to

> "[d]evelop in consultation with the heads of other Federal agencies a coordinated strategy for Federal facility compliance with applicable standards specified in section 4 [of E.O. 11752] which incorporates, to the maximum extent practicable, common procedures for an integrated approach to Federal agency compliance with such standards, and issue such regulations and guidelines as are deemed necessary to facilitate implementation of that strategy and to provide a framework for coordination and cooperation among the Environmental Protection Agency, the other Federal agencies, and the State, interstate, and local agencies."

E.O. 11752 § 3(d)(5), 38 Fed.Reg. at 34795. Pursuant to this mandate, the Administrator published guidelines on May 12, 1975, 40 Fed.Reg. 20664, which, *inter alia*, introduced the Consent Agreement mechanism as the principal method for ensuring federal agency compliance with appropriate pollu-tion control standards throughout the country. The process was described as a "documentation of a Federal facility's non-compliance with an applicable Federal, State, or local air pollutant emission limitation and the schedules and conditions under which the facility [would] be brought into compliance." 40 Fed.Reg. at 20665. The guidelines required all Consent Agreements to include a "timetable of increments of progress to abate emissions from each point in violation representing the Federal facility's commitment to achieve final compliance." *Id.* It is this aspect of the Consent Agreement challenged here which the District seeks to use as the factual predicate for its assertion of jurisdiction in this Court.

The instant Consent Agreement, apparently among the first executed by the Administrator, was an attempt by the Administrator to resolve a dispute between the district and GSA over GSA's failure to abide by pre-existing compliance schedules for the Central and the West Heating Plants which GSA had established with the District. When GSA failed to meet the schedules, the District issued an abatement order which contained a new compliance schedule requiring GSA to meet emission limitations by May 31, 1975. Apparently construing the order as a procedural requirement, GSA did not seek review, nor did it seek a variance; it simply refused to comply. On June 5, 1975, the District brought suit against GSA in the Superior

---

*granted* 422 U.S. 1041, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975), and *Alabama v. Seeber,* 502 F.2d 1238 (5th Cir. 1974) (substantive *and* procedural).

**7.** 42 U.S.C. § 1857f. Therein it is provided: "Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, shall comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements."

**8.** On December 19, 1973, then-President Nixon issued Executive Order No. 11752, 38 Fed.Reg. 34793, which stated:

"Compliance by Federal facilities with Federal, State, interstate, and local substantive standards and substantive limitations to the same extent that any person is subject to such standards and limitations, will accomplish the objective of providing Federal leadership and cooperation in the prevention of environmental pollution. *In light of the principle of Federal supremacy embodied in the Constitution, this order is not intended, nor should it be interpreted, to require Federal facilities to comply with State or local administrative procedures with respect to pollution abatement and control.*" § 1. (Emphasis added).

**9.** E.O. 11752 § 3(2), 38 Fed.Reg. at 34794.

Court for the District of Columbia seeking declaratory and injunctive relief. The suit was thereafter removed to the United States District Court for the District of Columbia, where it is currently pending. *District of Columbia, et al. v. Arthur Sampson, et al.*, Civil Action No. 75–1017. On August 15, 1975, more than two months after the suit was filed, the Administrator entered into the challenged Consent Agreement.

## II

The District urges that we have jurisdiction over its challenge to the Consent Agreement pursuant to Section 307(b)(1) of the Clean Air Act.[10] It suggests that since the Consent Agreement establishes compliance schedules for the two GSA heating plants different from previously established schedules, the Administrator's approval constitutes an "action in approving or promulgating any implementation plan under" Section 110.[11] We disagree.

■ Section 307(b)(1) grants exclusive jurisdiction to an appropriate court of appeals to hear challenges to a limited class of actions taken by the Administrator. By its terms, the statute allows review here only if the Administrator's actions are taken pursuant to Sections 110, 111(d), or 119(c)(2)(A), (B), or (C) of the Act. If the action is *not* taken pursuant to one of these provisions, a court of appeals is without authority to hear a challenge to it in the first instance. The District has not shown that the instant Consent Agreement was entered into in accordance with the statutory scheme; it merely asserts that since the Agreement tracks the statutory scheme in certain respects, particularly through the use of compliance schedules, it is tantamount to an action taken pursuant to statutory authority. While it is true that the

Agreement does contain a compliance schedule, we do not believe that that fact alone, nor the existence of other similarities with a statutory implementation plan, may be used to bootstrap an extra-statutory action into a statutorily authorized one for jurisdictional purposes.

The District rests its assertion of jurisdiction in this Court exclusively on a claim of Section 110 action by the Administrator. Section 110 of the Act is a complex provision concerning implementation plans which has given rise to extensive litigation over its proper construction. *See Train v. Natural Resources Defense Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), and cases cited therein. It carefully delineates the procedures which must be followed by the States and the Administrator in establishing the initial implementation plan and any revisions thereof. It does not address, however, the sensitive question of the role of federal facilities in this process.

■ The Executive Branch, taking the position that federal facilities need not comply with State procedural standards such as compliance schedules, developed its own set of procedural guidelines to ensure that federal facilities will ultimately meet substantive goals.[12] *See* Part 1 *supra*. In so doing, it created a clearly extra-statutory mechanism—one that is not within the scope of Section 110. Action taken pursuant to these guidelines is, therefore, beyond the scope of this court's Section 307 jurisdiction. In arriving at this conclusion we are mindful that the statute evinces an intent to allow review in courts of appeals of the Administrator's actions affecting implementation plans, but we believe that the specificity of the statutory grant of jurisdiction precludes review of the unique action presented here. The Consent Agree-

---

10. *See* note 1 *supra*.

11. Not involved here is an assertion of jurisdiction under § 110(f)(2)(B) of the Act, 42 U.S.C. § 1857c–5(f)(2)(B), which separately provides for judicial review "by the United States court of appeals for the circuit which includes [the] State" affected by the Administrator's action under authority of Sections 110(f)(1) and (2)(A)

of the Act, 42 U.S.C. §§ 1857c–5(f)(1) and (2)(A) of the Act, 42 U.S.C. §§ 1857c–5(f)(1) and (2)(A). Even had jurisdiction been so predicated, we would nevertheless dismiss for the reasons stated in this opinion.

12. We express no opinion as to the validity of this interpretation of the statute since that issue is not before us.

ment derives its existence not from Section 110 but rather from the Executive Branch's interpretation of Section 118 and the regulatory response to the problems of federalism engendered thereby.[13]

The Petition for Review filed by the District therefore was dismissed for lack of jurisdiction, and for the reasons stated above we affirm that disposition.

*Order accordingly.*

---

**13.** In an abundance of caution, we note in passing that *if* review of the action challenged herein is to be had *at all* it should be sought in the district court. Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706; *Pickus v. United States Board of Parole,* 165 U.S.App. D.C. 284, 286 & n. 4, 507 F.2d 1107, 1109 & n.4. (1974).