**UTAH POWER & LIGHT COMPANY,**
**Petitioner,**

v.

**ENVIRONMENTAL PROTECTION**
**AGENCY, Respondent.**

No. 76–1873.

United States Court of Appeals,
District of Columbia Circuit.

Order Granting Motion Dec. 23, 1976.

Decided Feb. 22, 1977.

Peter R. Taft, Asst. Atty. Gen., and Earl Salo, Atty., Dept. of Justice, Washington, D.C., were on the motion to dismiss filed by respondent.

Gerry Levenberg, Washington, D.C., and Verl R. Topham, Salt Lake City, Utah, were on the response in opposition filed by petitioner.

Before FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

Opinion filed by LEVENTHAL, Circuit Judge.

Opinion filed by FAHY, Senior Circuit Judge, joining with LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

Utah Power & Light Company (UP&L) petitioned this Court for direct review of a decision by the Environmental Protection Agency (EPA), subjecting three of UP&L's steam electric generating plants under construction to new source review under agency regulations regarding "significant deterioration of air quality."[1] In its petition for review filed September 20, 1976, UP&L predicated this Court's jurisdiction upon Section 307(b)(1) of the 1970 amendments to the Clean Air Act.[2]

On November 2, 1976, EPA filed a motion to dismiss for lack of jurisdiction in this Court. Specifically, EPA contended that UP&L was not challenging "the Administrator's action in approving or promulgating" a state implementation plan,[3] within the meaning of Section 307(b)(1). On December 23, 1976, after considering the motion and the response thereto, this Court entered an order granting EPA's motion to dismiss.

I

On December 5, 1974, respondent EPA promulgated regulations designed to prevent "significant deterioration" of air quality.[4] The regulations, effective January 6, 1975, were made applicable to any new stationary source "which has not commenced construction or modification prior to June 1,

---

1. 40 C.F.R. §§ 52.01(d),(f), 52.21.

2. 42 U.S.C. § 1857h–5(b)(1). That section provides, *inter alia*, that a petition for review of "the Administrator's action in approving or promulgating" any state implementation plan "may be filed only in the United States Court of Appeals for the appropriate circuit." *See* note 10 *infra*.

3. The states are charged with the duty to develop implementation plans designed to achieve the level of air quality prescribed by national "primary" and "secondary" air quality standards promulgated by the Administrator of

EPA. Section 107, 42 U.S.C. § 1857c–2. Pursuant to Section 110, 42 U.S.C. § 1857c–5, each state must submit its implementation plan to the Administrator for his approval. A proposed implementation plan must satisfy the requirements set out in Section 110(a)(2), 42 U.S.C. § 1857c–5(a)(2).

4. 39 Fed.Reg. 42510 (1974). Minor amendments to the regulations were published on January 16, 1975 (40 Fed.Reg. 2802), June 12, 1975 (40 Fed.Reg. 25004), and September 10, 1975 (40 Fed.Reg. 42011).

1975 . . . ."[5] The regulations were incorporated into all state implementation plans.[6]

In a letter dated September 2, 1975, Region 8 of the EPA requested that UP&L supply certain information on its plans to construct new power plants. UP&L responded by letter dated September 12, 1975, noting, *inter alia*, that it had begun construction on three new plants in Utah, after having obtained new source construction permits from the Utah Air Conservation Committee ("Committee"). In accordance with the then existing Utah Air Conservation regulations, these permits were based upon plans that included for each plant a flue gas desulfurization unit ("scrubber"), designed to remove 80 percent of the sulfur dioxide from the flue gases emitted by each plant. Construction on all three plants commenced prior to June 1, 1975, the cutoff date under the EPA significant deterioration regulations.

The Utah Air Conservation regulations were amended on July 9, 1975. On September 15, 1975, three days after its letter to EPA, UP&L applied to the Utah Committee for a determination that under the amended state regulations, the scrubbers were no longer required. In early 1976, the Utah Committee approved the elimination of the scrubbers from the plans for UP&L's three Utah plants.

On February 4, 1976, UP&L filed a request for an EPA ruling that the significant deterioration regulations do not apply to the three Utah plants. On March 25, 1976, EPA's Region 8 notified UP&L that the elimination of the scrubbers constituted a "modification" of the plants, occurring after June 1, 1975, and that such modification would bring the three plants within the ambit of the regulations.[7] Region 8 instructed UP&L to submit an application for permission to modify, pursuant to 40 C.F.R. § 52.21(d) (2)–(3). UP&L requested reconsideration on May 7, 1976. In a letter dated August 23, 1976, Region 8 reaffirmed its earlier opinion and notified UP&L that its decision was "a final determination in the case." Thereupon UP&L filed with this Court a petition for review, which EPA seeks to dismiss on jurisdictional grounds.

## II

This Court has previously noted that the jurisdictional provisions of the Clean Air Act "have been sources of periodic confusion"[8] and that therefore "proper disposition of a motion to dismiss, for lack of jurisdiction requires precise characterization of the action sought to be reviewed." *District of Columbia v. Train, supra* note 8, 533 F.2d at 1252. Section 307(b)(1) grants exclusive jurisdiction to courts of appeals "to hear challenges to a *limited* class of actions taken by the Administrator."[9] In the present case, the Court must decide whether the challenged action—*i.e.,* the EPA's decision as to the applicability of the significant deterioration regulations—can

5. *See* 40 C.F.R. §§ 52.21(d)(1), 52.01(d), (f). 40 CFR § 52.21(d)(1) provides, in pertinent part:
*Review of new sources* . . . [T]he requirements of this paragraph [*i.e.,* the significant deterioration regulations] apply to any new or modified stationary source of the type identified below which has not commenced construction or modification prior to June 1, 1975 . . ..
40 C.F.R. § 52.01(d) provides, in pertinent part:
The phrases "modification" or "modified source" mean any physical change in, or change in the method of operation of, a stationary source which increases the emission rate of any pollutant for which a national standard has been promulgated . . ..

6. *See, e.g.,* 40 C.F.R. § 52.2346 (amending Utah's implementation plan to incorporate by reference the significant deterioration regulations).

7. *See* note 5 *supra.*

8. *District of Columbia v. Train,* 175 U.S.App. D.C. 115, 533 F.2d 1250, 1252, *cert. granted,* 426 U.S. 904, 96 S.Ct. 2224, 48 L.Ed.2d 829 (1976). *See also National Resources Defense Council, Inc. v. Environmental Protection Agency,* 168 U.S.App.D.C. 111, 512 F.2d 1351, 1361 (1975), in which Judge Wright, dissenting in part, stated that "the courts play jurisdictional badminton with these provisions," "batting" cases back and forth between the district court and the court of appeals.

9. *District of Columbia v. Train, supra* note 8, 533 F.2d at 1254 (emphasis added).

fairly be characterized as "action in approving or promulgating any [state] implementation plan" under Section 307(b)(1).[10] If so, the court of appeals has exclusive jurisdiction to hear UP&L's claim.[11] If not, this Court is without jurisdiction and must grant the motion to dismiss.[12]

Characterization of the challenged action depends in turn on the nature of petitioner's challenge. Specifically, the court must determine whether the petitioner is attacking the validity of an agency regulation or, instead, is attacking a particular interpretation or application of that regulation.[13] Both the language of Section 307(b)(1) and the policy considerations underlying that provision compel the conclusion that challenges to the validity of certain agency

regulations are directly reviewable by courts of appeals, whereas challenges to interpretations of those regulations are not.[14] As with most general rules, an exceptional case may defy easy classification. In our opinion, this is not such a case.

UP&L's challenge cannot fairly be characterized as impugning the validity of 40 C.F.R. sections 52.21(d)(1) and 52.01(d), which, respectively, make the significant deterioration regulations applicable to stationary sources modified (as well as constructed) on or after June 1, 1975, and define "modification" to include "any physical change in or change in the method of operation of" the polluting source. First, UP&L's petition for review does not, on its face, attack the validity of the significant deterioration regulations.[15] Second, as

---

**10.** Section 307(b)(1), 42 U.S.C. § 1857h–5(b)(1), specifies a number of grounds for direct review in the court of appeals:

> A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c–7 of this title, any standard of performance under section 1857c–6 of this title, any standard under section 1857f–1 of this title (other than a standard required to be prescribed under section 1857f–1(b)(1) of this title), any determination under section 1857f–1(b)(5) of this title, any control or prohibition under section 1857f–6c of this title, or any standard under section 1857f–9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 of this title or section 1857c–6(d) of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit.
>
> . . .

None of the other grounds is relevant to this case, and neither party has argued otherwise.

**11.** 42 U.S.C. § 1857h–5(b)(1); see *District of Columbia v. Train*, supra note 8, 533 F.2d at 1252, 1254.

**12.** *See id.*.

**13.** This distinction is not new to the law. In determining the degree of deference owed an agency determination, courts have distinguished between claims that an agency's action is *ultra vires* and claims that an agency's interpretation of the act it administers is legally

unsound. *See, e.g., International Brotherhood of Electrical Workers, AFL–CIO v. NLRB*, 159 U.S.App.D.C. 272, 487 F.2d 1143, 1170–71 (1973), aff'd sub nom., *Florida Power & Light Co. v. International Brotherhood of Electrical Workers*, 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974).

**14.** Only by straining the meaning of the words "approving" and "promulgating" could it be said that challenges to interpretations or applications of EPA regulations constitute attacks on "the Administrator's action in approving or promulgating" any state implementation plan. Nothing in the legislative history of Section 307(b)(1) supports this strained reading of the statutory language. Indeed, a passage in the Report of the Senate Committee on Public works clearly reveals that applications of agency regulations are not embraced within Section 307(b)(1). In discussing Section 307(b)(2), 42 U.S.C. § 1857h–5(b)(2) [see note 18 *infra*], which, in enforcement proceedings, precludes review of issues that could have been raised under Section 307(b)(1), the Senate Committee states: "Of course, the person regulated would not be precluded from seeking review at the time of enforcement insofar as the subject matter applies to him alone." S.Rep.No. 91–1196, 91st Cong., 2d Sess. 41 (1970). If attacks on particular applications of regulations are not precluded by Section 307(b)(2), then presumably they are not reviewable under Section 307(b)(1).

**15.** The petition for review seeks review of the EPA's determination "that petitioner's three steam electric generating units, all of which commenced construction prior to June 1, 1975, are nonetheless subject to the regulations promulgated by respondent entitled 'Prevention of

EPA notes, this Court has already sustained the validity of those regulations.[16] Finally, any further facial challenge would seem to be time-barred under Section 307(b)(1).[17]

Consequently, unless UP&L seeks to challenge the EPA's interpretation of the new regulations, the statute provides that petitioner will not be entitled to judicial review

in any federal court.[18] And, as previously indicated, that kind of challenge is not cognizable under Section 307(b) (1).[19] Although we need not reach the question in this case, we note that if federal review of the action challenged here is available at all, it should be sought in the district court.[20]

Significant Air Quality Deterioration', 40 CFR Sections 52.01(d), (f), and 52.21."

**16.** *See Sierra Club v. Environmental Protection Agency,* 176 U.S.App.D.C. 335, 540 F.2d 1114 (1976), *cert. granted sub. nom. Utah Power & Light Co. v. EPA,* —— U.S. ——, 97 S.Ct. 1597, 51 L.Ed.2d 802. The Court sustained the "commenced" and "modified" provisions against a claim that the regulations should apply to stationary sources commencing construction or modified *prior to* June 1, 1975. *Id.* at 1123, 1133.

**17.** Section 307(b)(1) provides that any petition for review filed in a court of appeals pursuant to the jurisdictional grounds enumerated in that section "shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day." The significant deterioration regulations were promulgated on December 5, 1974, and were incorporated into Utah's implementation plan on June 12, 1975.

There is no contention here that although the regulation as issued apparently was accepted by petitioner as constitutional, the interpretation at hand is a "new" circumstance that, if accepted as a correct interpretation of the regulation, has the effect of rendering the regulation invalid.

**18.** The courts of appeals have exclusive jurisdiction to hear challenges to "the Administrator's action in approving or promulgating any implementation plan."' 42 U.S.C. § 1857h–5(b)(1); *see District of Columbia v. Train, supra* note 8, 533 F.2d at 1252, 1254; *see also* 42 U.S.C. § 1857h–5(b)(2) ("Action of the Administrator with respect to which review could have been obtained under [Section 307(b)(1)] shall not be subject to judicial review in civil or criminal proceedings for enforcement").

**19.** *See* note 14 and accompanying text, *supra.* Recent judicial opinions have tended to construe Section 307(b)(1) narrowly. *See District of Columbia v. Train, supra* note 8, 175 U.S. App.D.C. 115, 533 F.2d 1250 (challenge to consent agreement between EPA and GSA does not trigger Section 307(b)(1) jurisdiction); *West Penn Power Co. v. Train,* 522 F.2d 302, 309 (3rd Cir. 1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976) (action for declaratory judgment that power company

was not violating sulfur emission standards was a challenge to methods of compliance, not to plan itself, and thus did not constitute challenge to "Administrator's action in approving or promulgating any implementation plan"); *Utah International, Inc. v. Environmental Protection Agency,* 478 F.2d 126 (10th Cir. 1973) (challenge to EPA order disapproving previously approved portions of state plan did not constitute challenge to approval or promulgation of implementation plan).

**20.** Previous decisions of this court have upheld the jurisdiction of the district court under Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *See, e.g., Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107, 1109–10 & nn.4–5 (1974). The Supreme Court has granted certiorari in a case involving the same jurisdictional issue. *Mathews v. Sanders,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 829 (1976). Whatever the outcome of that case, it appears that UP&L could bring suit in federal district court under 28 U.S.C. § 1331(a), as amended by Act of October 21, 1976, Pub.L.No. 94–574, § 703, 90 Stat. 2721, which removed the amount in controversy requirement in civil actions against the United States or agencies thereof. Serious questions of due process would arise if neither of these provisions offered UP&L a jurisdictional predicate, in district court.

'Finally, we note that in its papers filed with this Court, UP&L stated that the ambiguities of the Clean Air Act created a dilemma: if petitioner had first filed a complaint with the district court, and if that court had then dismissed for lack of jurisdiction, the 30-day statute of limitation in Section 307(b)(1) would have barred UP&L from seeking review in this Court. Recognizing that the statutory scheme encourages litigants to file petitioners for review in the courts of appeals whenever jurisdiction is in doubt, we urge Congress to adopt the recommendation of the Administrative Conference of the United States and amend Section 307 to provide for transfer between courts of appeals and district courts when a proceeding to review EPA action under the Clean Air Act is filed in the wrong forum. Administrative Conference of the United States, Resolution of December 10, 1976, *Judicial Review Under the Clean Air Act and Federal Water Pollution Control Act,* reprinted at 41

FAHY, Senior Circuit Judge, concurring in part:

I join in the reasons set forth in the above opinion for the entry, on December 23, 1976, of our order granting EPA's motion to dismiss. I find it unnecessary to our disposition of the motion to discuss the question of jurisdiction of the District Court.

Fed.Reg. 56767 (Dec. 30, 1976). *See Investment Company Institute v. Board of Governors of the Federal Reserve System*, 179 U.S.App.

D.C. 311 at ——, 551 F.2d 1270, at 1272–73 (1977) (Leventhal, J., concurring).