**AMOCO OIL COMPANY**

v.

**UNITED STATES of America and the United States Environmental Protection Agency and Douglas Costle, Administrator of EPA and Charles V. Wright, Acting Regional Administrator, Region VII of EPA.**

No. 77–539–CV–W–3.

United States District Court,
W. D. Missouri, W. D.

May 8, 1978.

Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., and John P. Traylor, Amoco Oil Co., Chicago, Ill., for plaintiff.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., Patrick J. Cafferty, Jr., Atty., Dept. of Justice, and Robert A. Weissman, E. P. A., Washington, D. C., for defendants.

## ORDER

RUSSELL G. CLARK, District Judge.

Plaintiff Amoco Oil Company brings this action seeking declaratory judgment and injunctive relief enjoining the defendants from attempting to collect a civil penalty assessed by the defendants against the plaintiff in an administrative agency proceeding for alleged violations of the Clean Air Act, 42 U.S.C. § 7401 et seq., formerly 42 U.S.C. § 1857 et seq. Defendant United States has counterclaimed seeking enforcement of the assessed civil penalty. Both parties have moved for summary judgment and have filed a joint stipulation of material facts. On May 1, 1978, the parties were afforded an opportunity to present any additional evidence and to present their oral arguments in support of their respective motions. For the reasons stated herein, the motion of Amoco Oil Company for summary judgment is hereby granted, and the motion of the United States is denied.

## I. FACTUAL BACKGROUND

The following facts were stipulated and presented to the Court:

1. 40 C.F.R. § 80.2(j) reads as follows:
   (j) "Retail outlet" means any establishment at which gasoline is sold or offered for sale for use in motor vehicles.

2. 40 C.F.R. § 80.22(f)(1) reads as follows:
   (f) After July 1, 1974, every retailer shall equip all gasoline pumps and after January

1. Amoco Oil Company leases the premises known as Central City Standard from the owner of that property, Myrtle F. Willis. In turn, Amoco subleases the premises to Andrew J. Knobbe, who is the operator-retailer of the gas station which is a "retail outlet" within the meaning of 40 C.F.R. § 80.2(j).[1] On August 8, 1976, Region VII of the Environmental Protection Agency (E.P.A.), having inspected Central City Standard Station and determined that the retail outlet had failed to equip a leaded gasoline pump with a nozzle having an outside diameter of not less than .930 inches, charged both Amoco and Central Standard with a violation of 40 C.F.R. § 80.22(f)(1).[2]

2. On or about September 12, 1976, Amoco filed its answer to the administrative complaint denying that it was a "retailer" as that term is used in 40 C.F.R. § 80.22(f)(1) and stating that if a violation of that section occurred then the retail outlet operator Knobbe who owns and controls all gasoline nozzles at Central City Standard was solely liable for the penalties based on such violation.

3. A hearing was held before an Administrative Law Judge on December 17, 1976. On February 1, 1977, the Administrative Law Judge issued his findings which were:

   (a) That Amoco was a lessee and in turn Amoco sub-leased the premises to Knobbe d/b/a Central City Standard;

   (b) that the nozzles attached to the pump hoses dispensing gasoline were owned by Knobbe and that by the terms of the sublease between Amoco and Knobbe the entire control and direction of the business, operations, and activities conducted at Central City Standard remained with Knobbe; and

   (c) that on May 24, 1976, a nozzle on a pump dispensing gasoline was found to have a terminal end less than .930 inches.

31, 1975, every wholesale purchaser-consumer shall equip all gasoline pumps as follows: (1) Each pump from which leaded gasoline is introduced into motor vehicles shall be equipped with a nozzle spout having a terminal end with an outside diameter of not less than 0.930 inch (2.363 centimeters).

4. The Administrative Law Judge concluded as a matter of law that Amoco was a "retailer" as the word is defined in 40 C.F.R. § 80.2(k)[3] and used in § 80.22(f) and that an appropriate civil penalty should be assessed against Amoco.

5. On April 28, 1977, Charles V. Wright, Acting Regional Administrator for Region VII of the Environmental Protection Agency, entered his final order affirming the findings and conclusions of the Administrative Law Judge and assessed a civil penalty of $2,500.00 against Amoco. On June 20, 1977, Charles V. Wright denied Amoco's motion to reconsider his final order. To date, the penalty has not been paid.

## II.  JURISDICTIONAL BASIS

The regulations in question were adopted by the defendants under the authority of the provisions of 42 U.S.C. § 7545(c)(1) [formerly § 1857f–6c(c)(1)] which empowers the Administrator to "[by regulation] control or prohibit the manufacture, introduction into commerce, offering for sale, or sale of any fuel or fuel additive" which may contribute to air pollution. The Act provides for judicial review in § 7607 (formerly § 1857h–5) which states that a petition for *review* of the actions of the Administrator in *promulgating* "any control or prohibition under § 7545 (§ 1857h–5), . . . may be filed only in the United States Court of Appeals for the District of Columbia," within sixty days from the date the action appears in the Federal Register. Furthermore, "action . . . which review could have been obtained . . . shall not be subject to judicial review in civil or criminal proceedings for enforcement."

These provisions, as well as other sections which provide for judicial review and enforcement of individual sections of the Act, have created some confusion in the Courts. As Judge Wright, Circuit Judge, District of Columbia Circuit, has said "the courts play jurisdictional badminton with these provisions," "batting" cases back and forth between the district courts and the courts of appeals. *N.R.D.C. v. Environmental Protection Agency*, 168 U.S.App.D.C. 111, 121, 512 F.2d 1351, 1361 (1975). Since the filing of this action, the Act has been amended to read that any *final* agency action, in addition to the final agency promulgations as described in § 7545, is to be reviewed only in the District of Columbia Circuit Court of Appeals. However, this Court benefits from a recent decision concerning the unamended Act and the jurisdictional basis for judicial review at the district court level.

■ In *Utah Power & Light v. Environmental Protection Agency*, 180 U.S.App. D.C. 70, 73, 553 F.2d 215, 218 (1977) the appellate court established a distinction between an action challenging the validity of agency regulations/promulgations and an action challenging interpretations of those regulations. The former are reviewable only by the courts of appeals whereas the latter, being mere challenges to the interpretations of otherwise valid regulations/promulgations, may be brought in the district courts. Thus, jurisdiction of this court lies pursuant to 28 U.S.C. § 1331(a) to entertain plaintiff's challenge to defendants' interpretations of an existing valid regulation. Without question this Court has jurisdiction of the defendants' counterclaim to seek enforcement and payment of the assessed penalty. 42 U.S.C. § 7545(d). Therefore, this Court has jurisdiction to determine the legal issue of the correct interpretation of the term "leases" as found in the definition of "retailer" in 40 C.F.R. § 80.2(k).

## III.  LEGAL ARGUMENTS OF THE PARTIES

Plaintiff, joined by the American Petroleum Institute as amicus curiae, summarizes the dispute over the breadth of the regulation in one word: control. That is, the plaintiff argues that the premises are sub-

---

**3.**  40 C.F.R. § 80.22(k) reads in full:
  (k) "Retailer" means any person who owns, leases, operates, controls, or supervises a retail outlet.

leased to Mr. Knobbe, the owner/operator of the business or "retail outlet" and that plaintiff, as lessor, does not retain control over the nozzles, pumps, and other equipment owned and utilized by Knobbe as lessee. To impose liability upon Amoco, it is asserted, would create vicarious liability where none is intended or established by statute. Defendants do not deny, and have stipulated to, the fact that under the provisions of the sublease Knobbe retains the entire control and direction of the business, operations and activities conducted at Central City Standard, and that the nozzles were owned and controlled by Knobbe. Nevertheless, defendants maintain that the plain and obvious language of the regulation which defines a "retailer" to be any person "who owns, *leases*, operates, controls, or supervises a retail outlet" includes both the *lessee*-Knobbe and the *lessor*-Amoco.

To support this contention that the regulation is intended to impose obligations on persons other than the operators of the retail outlets, defendants argue in their brief that when the regulations were initially proposed, the duty to equip gasoline pumps with proper sized nozzles was imposed upon "every owner or operator of a retail outlet." 37 Fed.Reg. 3883 (Feb. 23, 1972). The term "owner or operator" was not defined in the proposed regulation. Other sections of the regulation utilized the term "retailer" which was defined as "person[s] selling, or offering for sale, gasoline to the public." Consequently, representatives of the petroleum industry asked EPA to clarify the term "owner or operator" and in response to this request, the Administrator redefined "retailer" as "any person who owns, leases, operates, controls, or supervises a retail outlet" and then imposed the "nozzle" requirements on every "retailer". Thus, the defendants argue, it was the intention of the Administrator to impose obligations on the lessor as well as the person who operates and owns the retail outlet. These obligations are not, in the opinion of the defendants, imposing vicarious liability upon the plaintiff but rather a direct obligation—the violation of which forms the basis of the assessment of the civil penalty.

Plaintiff argues that the sole basis for which a penalty was assessed is that the term "leases" may have two different meanings. It may mean both the lessor and the lessee under a lease. Thus, although the "nozzle" requirement is imposed only on *retailers*, and a retailer is one who owns, leases, operates, controls, or supervises a *retail outlet*, Amoco was found liable solely because a word having two meanings is used to define another word. It is this imposition of liability because of the "lurking ambiguity" contained in the word "leases" to which Amoco so strenuously objects. Furthermore, Amoco argues that the EPA's final definition of retailer was not meant to expand the scope of liability dramatically beyond the previous coverage, but was rather intended to more clearly define the various legal means by which a person could be in control of the selling of gasoline to the public through a "retail outlet". That is, when the term "owner or operator" was dropped and the term "retailer" replaced in the regulation, it was the intention of the Administrator to extend coverage to the various methods one could legally utilize to operate and control a gasoline station.

Plaintiff further cites the preamble of the regulations published in 38 Fed.Reg. 1254 (Jan. 10, 1973) which stated the purpose of the regulations:

> The proposed regulations set forth . . dimensions, specifications for pump nozzles and automobile fuel filler inlets *to prevent accidental use of leaded gasoline in vehicles equipped with emission control devices* requiring the use of unleaded fuel. [emphasis added]

Prevention of the use of leaded gasoline in cars equipped with emission control devices, Amoco asserts, cannot be obtained by imposing strict liability on lessors who have no control over the operation of the retail business. Therefore, the intentions of the regulations cannot be achieved by assessing lessors with penalties. To do so would be clearly contrary to the intentions of both Congress and the Administrator.

The American Petroleum Institute, as amicus, briefly argued that the government's interpretation of the definition imposes liability without fault contrary to the intention of the Act and that the government agency is attempting to promulgate rules without the required notice.

## IV. LEGAL CONCLUSION

▪ The interpretation of the term "leases" in its plain meaning may include both the concept of lessor and lessee. However, in this instance, when utilized as a further definitional explanation of the term "retailer" in a regulation, the *possible* definition must give way to the more *reasonable* definition. As stated by the Supreme Court, "literalness" in statutory construction "may strangle meaning". *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211, 215 (1962). When the interpretation of a single word appearing in conjunction with other similar terms is at issue, it is often necessary to invoke the maxim *noscitur a sociis* ; that is, "a word is known from its associates". This is especially true when the word is capable of latent ambiguity when removed from its juxtaposition with the other words. *Polaroid Corp. v. C. I. R.*, 278 F.2d 148 (1st Cir. 1960), aff'd sub nom., *Jarecki v. Searle & Co.*, 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961). The narrower meaning of a word is preferable if it comports with the "common denominator" meaning of the companion words. Herein, the companion words found in the definition of "retailer" are "owns", "controls", "operates", and "supervises". These words possess as their common denominator the connotation of "control". So too, a lessee of a retail outlet would also possess "control". Therefore, Mr. Knobbe the operator of the service station owns, operates, controls, and supervises his retail outlet which is leased from the plaintiff Amoco Oil Company. He is squarely within the definition of the term "retailer" and under the regulation is clearly liable.

The lessor's liability however remains less certain. During oral arguments before this Court, the government admitted that under its interpretation of the word "leases" the original lessor, Mrs. Willis, also is potentially liable for the violation but was not charged pursuant to the Administrator's discretion. Therefore, as it was briefed and argued, the liability of the lessors is "direct" and shared equally with the lessee under the definition, regardless of the amount of control the lessor or sub-lessor possesses over the lessee's enterprise.

▪ It is certainly true that an interpretation given by an agency to one of its own regulations is entitled to judicial deference. The agency's interpretation is usually controlling unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Udall v. Tallman*, 380 U.S. 1, 17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965). Herein, the interpretation urged by the Environmental Protection Agency is erroneous and inconsistent with the regulation's emphasis upon liability being contingent upon the degree of control. In *Amoco Oil Co. v. Environmental Protection Agency*, 177 U.S. App.D.C. 123, 128, 543 F.2d 270, 275 (1976) the Court found that:

> There is nothing in the statutory grant of power to the Administrator "by regulation [to] control or prohibit the manufacture, introduction into commerce, offering for sale, or sale of any fuel or fuel additive for use in a motor vehicle or motor vehicle engine . . ." 42 U.S.C. § 1857f–6c(c)(1), that expressly or impliedly authorizes him to alter the settled law between lessor and lessee as to their respective responsibilities in tort so as to make the refiner liable for independent lessees as though they were mere subservient employees.

That case admittedly concerned a different liability imposing regulation. However, that regulation and the definitional regulation herein were both promulgated and adopted by the Administrator utilizing the same statutory grant of authority, 42 U.S.C. § 1857f–6c(c)(1), now 42 U.S.C. § 7545. Therefore, if the Administrator is unable to impose "blanket vicarious liability" under the decision in *Amoco*, supra,

then it is unable to assert that the definition of "retailer" includes the refiner-lessor as well as the retailer/operator-lessee. To do so would be to establish "blanket vicarious liability" under the guise of "direct" liability. This Court is unpersuaded by the defendants' arguments that this "direct" liability is distinguishable from vicarious liability. The essence of vicarious liability is the imputation of fault upon a person who otherwise is faultless. This imputed negligence is founded upon the existence of some relationship between the parties, such as the relationship between master and servant or employer and employee. Prosser, Law of Torts, § 69, (Fourth Edition). As stated in the prior *Amoco* decision:

> The mere fact that a retailer sells a refiner's products and leases his facilities from the refiner are not by themselves such compelling evidence of control by the refiner as to justify conclusive imputation to the refiner of the retailer's negligence. 543 F.2d at 276.

To couch this imposition of vicarious liability in terms of "direct" liability solely because the term "retailer" is defined in part as one who "leases" a retail outlet, and the term "leases" has two concepts, is plainly erroneous and inconsistent with the regulation.

The E.P.A. argues that the imposition of this "direct" liability is the most effective method of enforcing the "nozzle" regulations to achieve the intent of the statute. It is certainly true that imposing liability upon the retailer-operator for violations of the nozzle size regulations would effect the greatest compliance because the pumps, hoses, and nozzles are directly under the control of the retail-operator. But it is difficult for this Court to understand how the goal of preventing leaded fuel from being introduced into cars designed only to receive unleaded fuel can better be

achieved by assessing a civil penalty upon the lessor of the premises for the conduct of the lessee.[4] This is especially incomprehensible when the government admits that Mrs. Willis is potentially liable but was not assessed a penalty due to the Administrator's discretionary enforcement. It would appear to this Court that the preferable method of achieving the imposition of liability against those refiners which maintain direct and total control over the so called "independent" retail-operators would be to amend the regulation. To assert that the regulation includes lessors because some lessors may be refined would appear to be overinclusive, for Mrs. Willis is included in that class as well. This question need not, and cannot, be answered by this Court for by statute this Court may only examine the legal definition of the term "retailer" as found in an otherwise valid regulation. Likewise, this Court will not declare the regulation to be an improper exercise of rulemaking through adjudication.

For the reasons stated herein, it is hereby

ORDERED that the plaintiff's motion for summary judgment is hereby granted, and the defendants' motion for summary judgment upon its counterclaim is denied; each party to bear its respective costs; and it is further

ORDERED that the plaintiff will draft and submit a proposed order granting the declaratory and injunctive relief sought; said proposed order to be filed on or before May 15, 1978.

---

4. Although the lease between Amoco and Knobbe was not introduced into evidence, it was stated at oral arguments in response to an inquiry by this Court that it contains an indemnity clause. If so, it is entirely possible that the assessment of the $2,500 fine against Amoco may be ultimately recovered by Amoco as lessor against the lessee. This possibility would greatly diminish the rationale of the E.P.A. that by fining the refiner-lessor more control will be exerted to prevent the introduction of leaded gasoline into vehicles equipped for unleaded fuels.