**WASTE MANAGEMENT OF ILLINOIS, INC., Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Valdas V. Adamkus, Regional Administrator, and Basil G. Constantelos, Director, Waste Management Division, Defendants.**

No. 88 C 2797.

United States District Court,
N.D. Illinois, E.D.

April 17, 1989.

Angus MacBeth, Peggy L. O'Brien, Sidley & Austin, Chicago, Ill., for plaintiff.

Gail Ginsberg, Asst. U.S. Atty., Chicago, Ill., Kaye A. Allison, Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiff Waste Management of Illinois, Inc. ("Waste Management") brought this action to challenge certain actions of the United States Environmental Protection Agency ("U.S. EPA") and two of its officials. Currently before the Court are cross-motions for summary judgment on certain claims and a motion to dismiss, but we need decide none of these here. As we explain below, we conclude that we lack subject matter jurisdiction over this case, and we therefore transfer it to the United States Court of Appeals for the District of Columbia Circuit.

### I. Background

#### A. The RCRA and Accompanying Regulations

The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6991i (1982 &

Supp. IV 1986) ("RCRA"), the federal statute regulating the storage, treatment and disposal of solid and hazardous waste, requires each operator of a hazardous waste facility to obtain a permit. 42 U.S.C. § 6925(a) (Supp. IV 1986). In order to obtain a permit, an operator must provide rather detailed information about the hazardous waste to be treated, stored or disposed of. *See id.* § 6925(b); *see also* 40 C.F.R. §§ 270.13–270.21 (1988). Because of the time and difficulty involved in processing these applications, especially when the RCRA first went into effect, Congress provided that facilities in existence on the statute's November 19, 1980 effective date could continue operations as "interim status" facilities as long as they had made a permit application. 42 U.S.C. § 6925(e) (1982). Under the regulations implementing this provision, interim status facilities were required to file only a relatively simple "Part A application." *See* 40 C.F.R. § 270.13 (1987). If approved, the Part A application allows the facility to operate on an interim basis, but at a later date the oprator must file a more extensive "Part B application." *See id.* §§ 270.10(e)(4), 270.-14.

The RCRA contemplates both federal and state involvement in the granting and enforcement of permits. Specifically, the statute directs the Administrator of the U.S. EPA to promulgate regulations concerning the granting of hazardous waste permits, 42 U.S.C. § 6925(c) (Supp. IV 1986), and the Administrator has issued a lengthy set of regulations on this subject. *See* 40 C.F.R. part 270 (1988). But the statute also encourages states to administer and enforce their own hazardous waste programs. 42 U.S.C. § 6926 (1982 & Supp. IV 1986). A state wishing to do so must submit an application to the Administrator of the U.S. EPA, and the state program will take effect within 180 days of the application, unless the Administrator determines that the state program (1) is not equivalent to or consistent with the federal program, (2) is not consistent with the programs in other states, or (3) does not provide adequate enforcement. *Id.* § 6926(b). If the Administrator does not make such a determination, the state is authorized to carry out its program "in lieu of" the federal program and may issue and enforce hazardous waste permits for facilities within its borders. *Id.*

Once a state program is authorized, any action taken by the state "shall have the same force and effect as action taken by the Administrator." *Id.* § 6926(d). Nonetheless, the U.S. EPA retains certain residual controls under the RCRA. For example, the Administrator may revoke a state-issued permit if the permitee fails to comply with RCRA sections 3004 and 3005, 42 U.S.C. §§ 6924–6925. *See* 42 U.S.C. § 6925(d) (1982). In addition, the Administrator may take enforcement action in a state with its own hazardous waste program, as long as he informs the state before taking action. *Id.* § 6928(a)(1), (2). Finally, if the Administrator determines that the state is not administering its program in accordance with the RCRA, he shall notify the state; if appropriate action is not taken, the Administrator is required to withdraw authorization from the state program. *Id.* § 6926(e).

The withdrawal of federal authorization is obviously an extreme step, one that requires the Administrator to establish a federal program to replace the repudiated state program. *See id.* In order to avoid such drastic measures, the U.S. EPA has promulgated regulations under which it may intervene in the granting and enforcement of state permits. As will be described in greater detail below, it is these regulations that lie at the heart of this litigation. These contested regulations allow the Regional Administrator of the U.S. EPA to comment on state permit applications and draft permits, 40 C.F.R. § 271.19(a) (1988), and if appropriate, to indicate "that issuance of the permit would be inconsistent with the approved state program," *id.* § 271.19(b). If he states that the permit is inconsistent with the state program, the Regional Administrator must specify how the permit is inconsistent and must identify what actions the State should take, "including the conditions which the permit would include if it were issued by

the Regional Administrator." *Id.* § 271.19(b)(2). If the Regional Administrator states in his comment that a particular condition is necessary, he may take action under RCRA section 3008(a)(3), 42 U.S.C. § 6928(a)(3) (Supp. IV. 1986), against the holder of the permit for failing to comply with the condition, even if the condition was not included in the final permit. 40 C.F.R. § 271.19(e)(2), (3) (1988). The actions that may be taken under section 3008(a)(3) include the revocation of the permit or a fine of up to $25,000 per day. *See* 42 U.S.C. § 6928(a)(3) (Supp. IV 1986).

### B. Factual and Procedural Background

Waste Management owns and operates a hazardous waste disposal facility, known as the CID facility,[1] located partially in Chicago and partially in Calumet City, Illinois. Waste Management uses what it calls Area 4 of the CID as a landfill for hazardous waste. According to Waste Management, Area 4 was constructed by excavating forty to fifty feet below grade through a water-bearing zone or aquifer called the Dolton Sand. Because the Dolton Sand was removed in creating Area 4, Area 4 is surrounded, but not underlain, by that zone. Area 4 itself is located in a glacial till, a zone approximately seventy-five feet thick and made of highly impermeable clay. Beneath the glacial till lies another aquifer known as the Silurian Dolomite. It appears that the U.S. EPA does not disagree with Waste Management's description of the geology of Area 4, but the two parties do disagree about the legal consequences that flow from that geology. In particular, the parties do not agree on what should be considered the "uppermost aquifer"; Waste Management contends that the Silurian Dolomite is the uppermost aquifer, while the U.S. EPA argues that the Dolton Sand is the uppermost aquifer. This disagreement is important because, as described below, a facility operator must follow certain procedures in monitoring the groundwater in the uppermost aquifer.

The CID facility was in existence when the RCRA went into effect in November 1980, so after the U.S. EPA had approved Waste Management's Part A application, Waste Management operated the CID as an interim status facility. In January 1986, while the CID facility was still on interim status, the Illinois EPA referred the CID facility to the U.S. EPA for enforcement action. Illinois requested that the U.S. EPA issue a compliance order because Waste Management had used certain unapproved materials in the construction of monitoring wells at the CID facility. Administrative Record ("Record") at 1218–19. The construction of the wells is not now at issue, but because of the Illinois referral, the U.S. EPA undertook its own investigation of the CID facility. As a result of this investigation, Basil Constantelos, the Director of the Waste Management Division of the U.S. EPA's Region V and one of the defendants in this case, filed an administrative complaint and order against Waste Management. *See* Record at 1238; *see also* Attachment 1 to Exhibit A, 1st Amended Complaint. This complaint, filed on September 22, 1986, was the beginning of what we shall refer to as the interim status proceedings. In the preamble to the complaint, Constantelos stated that Waste Management had been determined to be in violation of Section 3004 of the RCRA, 42 U.S.C. § 6924; the Illinois Environmental Protection Act, Ill. Rev.Stat. ch. 111–1/2, ¶ 1001 *et seq.;* and certain regulations adopted by the Illinois Pollution Control Board, Ill.Admin.Code tit. 35, §§ 725.190 to 725.194. *See* Complaint Preamble, Record at 1238. In the findings of violation themselves, however, Constantelos alleged only that Waste Management was in violation of provisions of the Illinois Administrative Code. Specifically, Constantelos stated the U.S. EPA's conclusion that both the Silurian Dolomite and the Dolton Sand were uppermost aquifers and that therefore both required groundwater monitoring "pursuant to 35 *Ill.Adm. Code* Part 725 Subpart F." Complaint ¶ 13, Record at 1245. Because Waste Management had not implemented a "Subpart F" monitoring program for the Dolton Sand, it was "in violation of 35 *Ill.Adm.*

---

**1.** The record does not indicate what, if anything, CID stands for.

*Code* 725.190 through 725.194." Complaint ¶ 14, Record at 1245.

On February 23, 1987, Waste Management filed a motion to dismiss the Region V complaint, arguing that the U.S. EPA lacked the authority to consider or enforce claims brought under the law of Illinois. On April 2, 1987, Administrative Law Judge Thomas Yost granted Waste Management's motion to dismiss. *In Re: CID–Chemical Waste Management of Illinois, Inc.*, Dkt. No. RCRA–V–W–86–R–77, Record at 1397. On August 18, 1988, however, after the present suit was filed, the Chief Judicial Officer of the U.S. EPA reversed. *In Re: CID–Chemical Waste Management of Illinois, Inc.*, RCRA (3008) Appeal No. 87–11 (Aug. 18, 1988), Exhibit B, 1st Amended Complaint.

In the meantime, while the interim status proceedings were progressing, action was also being taken on a permanent Part B permit for the CID facility. Waste Management had submitted a Part B application to the U.S. EPA in October 1983, Record at 4, but in January 1986, the U.S. and Illinois EPAs entered into a memorandum of agreement, *see* Record at 123, and the Illinois hazardous waste program, Ill. Rev.Stat. ch. 111½, ¶¶ 1020–1022.18 (1987); Ill.Admin.Code tit. 35, §§ 700 *et seq.* (1985), received final authorization. *See* 51 Fed. Reg. 3778 (1986). Consequently, the Part B application for the CID was turned over to the Illinois EPA.

When the Illinois EPA issued a draft permit for the CID facility on May 22, 1987, a copy was submitted to the U.S. EPA. The latter agency did not comment at that time, apparently because it believed that the draft permit satisfied the conditions of the federally authorized state program. Some time later, however, the U.S. EPA learned that the terms of the draft permit had been revised and therefore requested the Illinois EPA to provide a copy of the revised permit. Upon reviewing the

copy, the U.S. EPA determined that while the revised permit required some groundwater monitoring in the Dolton Sand, it did not require the extensive monitoring—the so-called "Subpart F" monitoring—that the U.S. EPA believed was necessary.

On January 25, 1988, in response to the changes in the CID permit, the U.S. EPA's Basil Constantelos sent the Illinois EPA the letter that is the subject of this lawsuit. In that letter, Constantelos indicated, pursuant to 40 C.F.R. § 271.19(b), that the revised draft permit "would be inconsistent with the approved state program." Record at 2036. The letter continues:

> In view of the fact that USEPA has determined the Dolton Sand to be, in and of itself, an uppermost aquifer at this facility, USEPA must find that the draft permit prepared by your Agency is inconsistent with the approved State program, to the extent that such draft permit does not impose all regulatory requirements.... USEPA may take action under Section 3008(a)(3) of the Resource Conservation and Recovery Act, should your Agency fail to incorporate the conditions in any issued permit, and should the Permittee fail to comply with any of the conditions.

*Id.* at 2036–37.

The Illinois EPA did not agree with the U.S. EPA's comments and prepared a response outlining the reasons for its disagreement. In particular, the Illinois EPA concluded that only the Silurian Dolomite was an uppermost aquifer; the Dolton Sand was merely "a potential pathway for contaminant migration." Record at 2389.[2] As such, the Dolton Sand needed some groundwater monitoring, but not the Subpart F monitoring thought necessary by the U.S. EPA. The Illinois EPA therefore concluded that "the groundwater monitoring program required in the RCRA permit for the CID facility meets and exceeds the requirements of 35 IAC [Ill.Admin.Code]

2. The parties now agree that because what is at issue here is the force and effect of Constantelos' January 25, 1988 letter, items issued after that letter should not be considered part of the Administrative Record. *See* Magistrate Gottschall's Minute Order of October 7, 1988. None-

theless, we will cite to the pages of the Administrative Record for these items, merely because citing to the consecutively paginated Record is easier than citing to the briefs where these items are also found. We will not, however, treat them as part of the Administrative Record.

724, Part F." *Id.* In accordance with its views, the Illinois EPA granted a final permit for the CID facility on March 4, 1988. *Id.* at 2074. This permit required Subpart F monitoring in the Silurian Dolomite, but less-extensive monitoring in the Dolton Sand.

On March 31, 1988, Waste Management filed the present suit against the U.S. EPA; Valdas Adamkus, Administrator of Region V of the U.S. EPA; and Basil Constantelos, Director of Region V's Waste Management Division and author of the January 25, 1988 letter. The original complaint presents six bases for relief. First, Waste Management seeks a declaratory judgment that section 3006(d) of the RCRA, 42 U.S.C. § 6926(d) (1982), which provides that state action "shall have the same force and effect" as action by the U.S. EPA, precludes the U.S. EPA from imposing any conditions beyond those found in the final permit issued by Illinois. Second, Waste Management contends that in the January 25, 1988 letter, the U.S. EPA asserts the power and authority to interpret and enforce Illinois law under section 3008 of the RCRA, 42 U.S.C. § 6928 (1982 & Supp. IV 1986). Accordingly, Waste Management seeks a declaratory judgment that section 3008 provides no authority for the U.S. EPA to enforce the laws of Illinois not imposed in the final permit. Third, Waste Management asserts that if the Illinois EPA had imposed the contested conditions in the final permit, Waste Management would have had a chance for a full hearing before the Illinois Pollution Control Board. In such a hearing, the Illinois EPA would be a party and the contested conditions would be stayed pending resolution. According to Waste Management, by imposing the contested conditions without a hearing, the U.S. EPA deprived Waste Management of its rights to procedural due process under the law of Illinois and, by extension, under the federal Constitution. Fourth, Waste Management notes that under the Illinois Administrative Code, the U.S. EPA could have petitioned the Illinois Pollution Control Board for review of the final permit within thirty-five

days after it was issued. The U.S. EPA chose not to do so, but rather asserted in the January 25 letter that it might pursue an enforcement action in its own administrative tribunal. Waste Management asserts that by doing so, the U.S. EPA has acted beyond the authority delegated by Congress and has denied Waste Management the due process of law. Fifth, Waste Management claims that its final permit is a property interest, and that the January 25 letter infringed on that property interest without an opportunity to be heard, again depriving Waste Management of the due process of law. Sixth, Waste Management argues that the U.S. EPA letter sought to impose conditions that go beyond the Illinois hazardous waste program, and that those conditions are therefore arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

Waste Management subsequently moved for summary judgment on the first five of its claims for relief, and the U.S. EPA then cross-moved for summary judgment on all six claims. While the parties were briefing the issues raised in their motions, the Chief Judicial Officer of the U.S. EPA handed down his opinion in the interim status proceedings. As noted previously, the Chief Judicial Officer held that the U.S. EPA had the authority under the RCRA to interpret and enforce the laws of Illinois. In response to this decision, Waste Management amended its complaint to add a seventh claim for relief, arguing that the U.S. EPA did not have such authority and asking this Court to vacate the decision of the Chief Judicial Officer. The U.S. EPA subsequently moved to dismiss the seventh claim for relief.[3]

After reviewing the issues raised by the cross-motions for summary judgment and the motion to dismiss, we realized that there was at least some question about our jurisdiction to hear this case. We therefore asked the parties for additional briefing on the jurisdiction issue. Memorandum Opinion of Nov. 30, 1988. As it turns out,

---

**3.** The U.S. EPA styled its motion as a motion to dismiss the amended complaint, but its brief in support of the motion only deals with the seventh claim for relief.

that issue is the only one we need consider here.

## II. Jurisdiction

■ In its complaint, Waste Management asserts that our jurisdiction is based on sections 1331, 1361 and 2201 of the Judicial Code, 28 U.S.C. §§ 1331, 1361 and 2201 (1982 & Supp. IV 1986). As we noted in our earlier opinion, the latter two sections clearly do not provide us with jurisdiction. Section 1361 deals with actions in the nature of mandamus, and Waste Management has not asked for mandamus relief. Likewise, section 2201, dealing with declaratory judgment, does not provide an independent basis for jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); 4 K. Davis, *Administrative Law Treatise* § 23.3 at 130 (2d ed. 1983). That leaves the federal question or "arising under" jurisdiction of section 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Although broad, our section 1331 jurisdiction may be narrowed if a special statute gives another court jurisdiction over a particular subject. *Assure Competitive Transportation, Inc. v. United States*, 629 F.2d 467, 471 (7th Cir.1980) ("[S]pecial statute vesting jurisdiction in a particular court cuts off the jurisdiction other courts might otherwise have under a more general statute."), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *see also Denberg v. United States Railroad Retirement Board*, 696 F.2d 1193, 1196 (7th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984).

■ In the present case, the question is whether the RCRA judicial review provision, RCRA section 7006, 42 U.S.C. § 6976, constricts our section 1331 jurisdiction and precludes our review of Waste Management's claims. In determining Congress'

intent in assigning jurisdiction, we must begin with the language of the statute. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 735, 105 S.Ct. 1598, 1602, 84 L.Ed. 2d 643 (1985). Section 7006(a)(1) provides:

Any judicial review of final regulations promulgated pursuant to this chapter and the Administrator's denial of any petition for the promulgation, amendment, or repeal of any regulation under this chapter shall be in accordance with sections 701 through 706 of Title 5, except that—

(1) a petition for review of the Administrator in promulgating any regulation or requirement under this chapter or denying any petition for the promulgation, amendment or repeal of any regulation under this chapter may be filed only in the United States Court of Appeals for the District of Columbia, and such petition shall be filed within ninety days from the date of such promulgation or denial, or after such date if such petition for review is based solely on grounds arising after such ninetieth day; action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement....

*Id.* § 6976(a)(1).[4] Waste Management contends that section 7006(a)(1) must be read strictly to give the District of Columbia Circuit jurisdiction only when the EPA Administrator promulgates a regulation or requirement under the RCRA or denies a petition for the promulgation, amendment or repeal of such a regulation. Waste Management also argues that it is only challenging EPA's interpretation or application of 40 C.F.R. § 271.19, not the regulation itself, and that section 7006(a)(1) therefore does not apply.

We agree that section 7006(a)(1) must be read strictly, but we do not accept the rest of Waste Management's argument. When

---

**4.** RCRA section 7006(b) provides that the regional Court of Appeals for the district in which an interested person resides or does business— in this case, the Seventh Circuit—has jurisdiction to review the Administrator's action in issuing, denying, modifying or revoking a permit,

or in granting, denying or withdrawing authorization to a state program. *Id.*, § 6976(b). Since we conclude section 7006(a)(1) gives jurisdiction in this case to the Court of Appeals for the District of Columbia Circuit, we need not consider the effect of section 7006(b).

Congress has spoken clearly, "this court simply is not at liberty to displace, or to improve upon, the jurisdictional choices of Congress." *Five Flags Pipe Line Co. v. Department of Transportation*, 854 F.2d 1438, 1441 (D.C.Cir.1988).[5] Congress has spoken clearly here; review in the District of Columbia Circuit is limited to cases challenging either the Administrator's promulgation of any regulation or requirement under the RCRA or his denial of a petition for the promulgation, amendment or repeal of any such regulation. Moreover, the Seventh Circuit has strictly construed another aspect of the RCRA's jurisdictional scheme. Among other things, RCRA section 7006(b) places review of the Administrator's action "in issuing, denying, modifying, or revoking a permit" in the regional Court of Appeals for the district in which an interested person resides or does business. 42 U.S.C. § 6976(b). The Seventh Circuit has held that interim status, even though it has the same effect as a permit, is not the same as a permit; therefore, the Administrator's termination of interim status, even though it has the same effect as the revocation of a permit, is not reviewable under section 7006(b). *Northside Sanitary Landfill, Inc. v. Thomas*, 804 F.2d 371, 384 (7th Cir.1986). Other Courts of Appeals have also concluded they have no jurisdiction over interim status determinations under section 7006(b). *Sanders Lead Co. v. Thomas*, 813 F.2d 1190 (11th Cir.1987); *Hempstead County & Nevada County Project v. United States Environmental Protection Agency*, 700 F.2d 459, 462 (8th Cir.1983). *Contra Vineland Chemical Co. v. United States Environmental Protection Agency*, 810 F.2d 402, 406 (3d Cir. 1987). We conclude that section 7006(a)(1) should be read in the same strict way that these courts have read section 7006(b).

But the rule of strict construction has an important corollary: restrictions on our subject matter jurisdiction cannot be circumvented by artful pleading. "To view the matter otherwise would be to allow the complainant's own description of its theory to determine the forum with jurisdiction." *United Transportation Union v. Norfolk & Western Railway Co.*, 822 F.2d 1114, 1120 (D.C.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988).[6] Put another way, we must decide whether the actions challenged by Waste Management "can fairly be characterized," *see Utah Power & Light Co. v. Environmental Protection Agency*, 553 F.2d 215, 217–18 (D.C.Cir.1977), as "action of the Administrator in promulgating any regulation" under the RCRA. *See* 42 U.S.C. § 6976(a)(1). Characterization of the challenged action, in turn, depends "on the nature of [Waste Management's] challenge. Specifically, the court must determine whether [Waste Management] is attacking the validity of an agency regulation or, instead, is attacking a particular interpretation or application of that regulation." *Utah Power & Light*, 553 F.2d at 218. If Waste Management is attacking the validity of an EPA regulation, jurisdiction is in the District of Columbia Circuit; if Waste Management is instead attacking a particular interpretation or application of that regulation, jurisdiction is in this Court. *See id.*

After reviewing Waste Management's amended complaint, we conclude that it is attacking the validity of an EPA regulation, 40 C.F.R. § 271.19 (1988), and that jurisdiction therefore is in the District of Columbia Circuit. We consider each of Waste Management's seven claims for relief below.

1. Waste Management first asks us to declare that RCRA section 3006(d), 42 U.S.

---

5. We note, however, that Professor Kenneth Culp Davis, "a widely respected administrative law scholar," *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 2736, 101 L.Ed.2d 749 (1988), has concluded that courts have not always been so true to legislative intent when deciding which court possesses jurisdiction. *See* 4 K. Davis, *Administrative Law Treaties* § 23.5 (2d ed. 1983).

6. As the District of Columbia Circuit has held "[P]roper disposition [of the jurisdictional issue] requires precise characterization of the action sought to be reviewed." *District of Columbia v. Train*, 533 F.2d 1250, 1252 (D.C.Cir.1976).

C. § 6926(d), bars the EPA from imposing conditions beyond or inconsistent with those found in the state issued permit. *See* 1st Amended Complaint ("Complaint"), ¶ 22, Prayer for Relief ("Prayer") ¶ (a). Yet 40 C.F.R. § 271.19(e)(2) specifically allows the Regional Administrator to take action against a holder of a state-issued permit "on the ground that the permittee is not complying with a condition that the Regional Administrator ... stated was necessary to implement approved State program requirements, *whether or not that condition was included in the final [state] permit*" (emphasis added). Thus, a declaration that the U.S. EPA cannot impose conditions beyond the state permit would necessarily be a declaration that section 271.19 is invalid.

2. Waste Management asks us to declare that U.S. EPA has no jurisdiction or authority under RCRA section 3008(a), 42 U.S.C. § 6928(a), to enforce Illinois laws not imposed in the final state permit. Complaint ¶ 25, Prayer (b). Again, however, 40 C.F.R. § 271.19 purports to give the Regional Administrator just such power, so Waste Management's claim is essentially that § 271.19 is invalid.

3. Waste Management contends that if the Illinois EPA had imposed the contested conditions, Waste Management would have had a chance for a full hearing before the Illinois Pollution Control Board. Since the U.S. EPA did not provide a similar hearing, Waste Management argues that it has been deprived of procedural due process under Illinois law and federal Constitution. Complaint ¶ 28, Prayer ¶ (c). But the regulations do not require such a hearing, so Waste Management's argument is essentially that the regulations are invalid because constitutionally infirm.

4. In a similar vein, Waste Management notes that the U.S. EPA could have petitioned the Illinois Pollution Control Board for review of the terms of the Illinois permit, but did not. Rather, the U.S. EPA warned Waste Management that it might pursue an enforcement action in its own administrative tribunal. According to Waste Management, the U.S. EPA has

"acted beyond the scope of the authority delegated ... by Congress and has denied [Waste Management] due process of law." Complaint ¶ 31. However, 40 C.F.R. § 271.19(e), by reference to the U.S. EPA's rules of practice, 40 C.F.R. Part 22, authorized the U.S. EPA to proceed in its own administrative tribunal. If to do so is beyond the U.S. EPA's authority or is violative of the due process clause, then § 271.19(e) is invalid.

5. Waste Management also contends that its state permit is a property interest, and that by imposing additional conditions without an opportunity to be heard, the U.S. EPA deprived it of property without due process of law. Complaint ¶ 34. Yet 40 C.F.R. § 271.19 does not explicitly require the U.S. EPA to hold a hearing before deciding that a condition is necessary under a state program. Again, Waste Management's challenge is essentially a challenge to the validity of 40 C.R.D. § 271.19.

6. Waste Management argues that "[b]y imposing ... conditions not required by ... the Illinois hazardous waste regulatory program ... Region V [of the U.S. EPA] has acted arbitrarily, capriciously, in abuse of its discretion or otherwise not in accordance with the law." Complaint ¶ 36. Note here that the complaint does not challenge the conditions in and of themselves, but only because they are beyond the Illinois hazardous waste program. Again, Waste Management's complaint is against something that is permitted by the regulation and will succeed only if the regulation is held invalid.

7. Finally, Waste Management asks us to vacate the U.S. EPA's Chief Judicial Officer's opinion of August 18, 1988, which asserts that the Agency has the power to interpret and enforce the law of Illinois. Although the Chief Judicial Officer's decision does not mention 40 C.F.R. § 271.19, the decision implicitly upholds the regulation, and vacating the decision would have the same effect as declaring the regulation invalid.

In short, Waste Management's complaint attacks the validity of 40 C.F.R. § 271.19,

and jurisdiction is therefore in the District of Columbia Circuit. Moreover, even if we are wrong about some of Waste Management's claims,[7] the District of Columbia Circuit has jurisdiction over the entire complaint. The Supreme Court has held that the courts should avoid bifurcation of administrative review "[i]n the absence of specific evidence of contrary congressional intent." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985). Thus, "when jurisdiction to review administrative determinations is vested in the courts of appeals these specific, exclusive jurisdiction provisions preempt district court jurisdiction over related issues under other statutes." *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1231 (7th Cir.1988); *see also United Transportation Union v. Norfolk & Western Railway Co.*, 822 F.2d 1114, 1120 (D.C.Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988); *Suburban O'Hare Commission v. Dole*, 787 F.2d 186, 192–93 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 169, 93 L.Ed.2d 106 (1986); *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C.Cir.1979) ("The policy behind having a special review procedure in the first place ... disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals.")

■ However, Waste Management has also advanced certain constitutional claims here. In our view, that should not matter; section 7006 provides that the District of Columbia Circuit has jurisdiction over challenges to RCRA regulations, and it does not distinguish between statutory, constitutional or any other type of challenge. The Seventh Circuit appears to be in agreement with us on this point. *See Gaunce v. de-Vincentis*, 708 F.2d 1290, 1293 (7th Cir.) (statute provided that direct and exclusive review of Federal Aviation Administration order was in the court of appeals; "The statutorily prescribed requirements cannot be dispensed with merely because the administrative proceeding dealt with an agency's proof of specified regulatory viola-

tions, while appellant is raising a due process constitutional claim in the judicial proceeding."), *cert. denied*, 464 U.S. 978, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983). Nevertheless, in this case we must also consider the views of the District of Columbia Circuit, since it is that court which will review our decision. Unfortunately, that court's decisions in this area are particularly confusing. As we noted in our opinion ordering rebriefing, the District of Columbia Circuit at one time held that "[o]nce a plaintiff has alleged a nonfrivolous constitutional claim, the district court has jurisdiction under section 1331, and dismissal for want of jurisdiction is improper...." *Association of National Advertisers, Inc. v. Federal Trade Commission*, 627 F.2d 1151, 1157 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). Thus, the district court had jurisdiction to consider a due process challenge to interlocutory agency action, even though review of final agency decisions was in the courts of appeals. If the *National Advertisers* case were still good law, we would have jurisdiction over Waste Management's constitutional claims, and because of the presumption against bifurcation, possibly over its other claims as well.

The District of Columbia Circuit seemingly disavowed this particular aspect of *National Advertisers* in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C.Cir.1984) ("*TRAC*"). In *TRAC*, the court held that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Id.* at 75. The court did not tell us whether the petitioners' particular challenge—that the FCC had unreasonably delayed making a decision—was based on a constitutional or a statutory ground, but it appears that the court's decision should apply to both types of claims. The court specifically stated

---

7. Reasonable people might conclude, for example, that Waste Management's fifth claim is really a challenge to the application of the regulation, rather than a challenge to the regulation's validity.

that "[p]ast suggestions that the District Court has general federal question jurisdiction under 28 U.S.C. § 1331 over [some claims affecting the appellate's court's future statutory review] were in error." *Id.* at 77 n. 30. The court cited *National Advertisers* as an example of this error, and since *National Advertisers* was based, *inter alia,* on constitutional claims, the *TRAC* decision would appear to apply to cases based on constitutional claims.

Nonetheless, in *Ticor Title Insurance Co. v. Federal Trade Commission,* 814 F.2d 731 (D.C.Cir.1987), the court again split over whether district courts have jurisdiction over constitutional challenges to agency action when jurisdiction is otherwise vested in the court of appeals. All three judges voted to affirm the specific district court holding in *Ticor,* but each employed different reasoning. In addition, two of the judges took the opportunity to discuss the *TRAC* decision and the issue of district court jurisdiction over constitutional claims. In what would have been dicta even if the opinion had been for the court, Judge Harry T. Edwards wrote, "Once the constitutional claim was subject to review, it would of course be brought before the court of appeals in conjunction with any nonconstitutional defenses to the final agency action." *Id.* at 744 (opinion of Edwards, J.). By contrast, District Judge Joyce Hens Green, sitting by designation, concluded that district courts had jurisdiction over constitutional challenges to agency action. *Id.* at 757–58 (opinion of Green, J.).

It is difficult to know how to proceed in the face of such conflicting signals, but we conclude that whenever jurisdiction is vested in a Court of Appeals, the Court of Appeals has jurisdiction over related constitutional claims as well. Both judges who discussed the issue in *Ticor* used the *TRAC* decision as their guide, *see id.* at 743–44 (opinion of Edwards, J.); *id.* at 757–58 (opinion of Green, J.), and we will do the same here. To be sure, the decision in *TRAC* is not exactly parallel to the situation in the present case; we are not considering claims that affect the future Court of Appeals review, *see TRAC,* 750 F.2d at 77.

Yet the language of the *TRAC* decision does not appear to be limited to the facts of the case. The court stated that "[b]y lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Id.* This "class of claims" would appear to include constitutional claims. Moreover, we see no reason to treat statutory and constitutional claims differently. Generally, section 1331 gives district courts the jurisdiction to consider claims "arising under the Constitution, laws, or treaties of the United States." Nonetheless, it is "well settled," even in the District of Columbia Circuit, that a statute which vests special jurisdiction in a court of appeals cuts off jurisdiction in the district court over related statutory claims, that is, cuts off jurisdiction over claims arising under the "laws" of the United States. *See United Transportation Union,* 822 F.2d at 1120; *TRAC,* 750 F.2d at 77; *City of Rochester,* 603 F.2d at 936. But "laws" lies just to the right of "Constitution" in section 1331, separated by a mere comma; we do not see how a statute can divest this Court of jurisdiction over what is to the right of the comma, but not over what is to the left, at least not without some evidence that this was Congress' intent. We therefore conclude that we do not have jurisdiction over Waste Management's challenges, constitutional or otherwise.

Waste Management advances two other arguments to support a contrary conclusion, but we reject them both. First, Waste Management contends that a settlement agreement entered into by the U.S. EPA in the District of Columbia Circuit supports our jurisdiction. The settlement entered in November 1981 partially resolved a number of challenges against various U.S. EPA regulations, including 40 C.F.R. § 271.19, then codified at 40 C.F.R. § 123.38. *Natural Resources Defense Council v. United States Environmental Protection Agency,* 673 F.2d 392 (D.C.Cir. 1980) and consolidated cases. Without citing to any particular provision of the agree-

ment, Waste Management argues that the U.S. EPA "concedes ... that [40 C.F.R. § 271.19] itself can only be challenged in the district courts, and that such a challenge is beyond the jurisdiction of the D.C. Circuit." Waste Management's Jan. 17, 1989 Brief at 5.

If this were really the U.S. EPA's position in the settlement agreement, we would be unsure what effect to give the settlement agreement. On the one hand, an administrative agency cannot enlarge our jurisdiction, *see Sonicraft v. NLRB,* 814 F.2d 385, 386 (7th Cir.1987), nor can jurisdiction be created by consent of the parties, *see Plaquemines Port, Harbor & Terminal District v. Federal Maritime Commission,* 838 F.2d 536, 542 n. 3 (D.C.Cir.1988). On the other hand, an agency's interpretation of a statute in its area of expertise is entitled to our deference, *see, e.g., Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), and this presumably is true with regard to questions of jurisdiction as well. Moreover, the settlement agreement might be considered to have the imprimatur of the District of Columbia Circuit.

But we need not resolve this question here, because the agreement does not suggest that we have jurisdiction over a challenge to 40 C.F.R. § 271.19. The agreement has two references to section 271.19. The first states:

> Issue 21 [concerning section 271.19], insofar as it involves EPA's authority to enforce state program requirements not included in State-issued RCRA permits, is not ripe for review in this litigation and if a permittee who is represented in this litigation later raises this issue ... EPA will not object on the ground that the issue could have been raised in this litigation.

Settlement, ¶ 2, pp. 2–3. Clearly, this provision does not address the issue of which court has jurisdiction. The second reference is even less helpful to Waste Management's position. This reference calls for the U.S. EPA to amend the regulation to provide permit applicants an opportunity to respond to a U.S. EPA "comment" that a draft permit did not meet the requirements of state law. The proposed revision also provided that the U.S. EPA's notification to the permittee that it had decided to withdraw or not to withdraw the comment would be deemed final agency action. Agreement, Exh. C, Issue 21b at ¶ 1(e). However, the agreement also provided for a preamble to section 271.19, "indicating that final agency action is only one of the prerequisites for judicial review and that the last sentence of paragraph (e) *does not purport to address other aspects of jurisdiction....*" *Id.* at ¶ 2 (emphasis added). For reasons that are not clear, the U.S. EPA never amended the regulation as promised, but even an amended regulation would not affect the jurisdiction issue.

■ Waste Management's second argument in favor of our jurisdiction is based on a district court's expertise in finding facts. Waste Management argues that its sixth claim for relief will require the resolution of various factual issues, and that jurisdiction should therefore be in this Court. While that may be true in ambiguous cases, *cf. Indiana & Michigan Electric Co. v. United States Environmental Protection Agency,* 733 F.2d 489, 491 (7th Cir. 1984) (jurisdiction was in the court of appeals because there were no additional facts to be found), where Congress has spoken clearly, "[i]t is not our task to determine which would be the ideal forum for judicial review." *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 593, 100 S.Ct. 1889, 1898, 64 L.Ed.2d 525 (1980). Moreover, if factfinding is necessary, RCRA section 7006(a)(2) provides that a court may order the U.S. EPA to take evidence and make factual determinations. 42 U.S.C. § 6976(a)(2). Most importantly, there appears to be no need for factfinding. Waste Management's sixth claim for relief asserts that "[b]y imposing ... conditions not required by ... the Illinois hazardous waste regulatory program ... [the U.S. EPA] has acted arbitrarily, capriciously, in abuse of its discretion or otherwise not in accordance with the law." The claim is not that the U.S. EPA's actions are arbitrary or capricious because of certain facts about the hydrogeology of the CID site, a matter outside the normal expertise of the District

of Columbia Circuit or, for that matter, of this Court. Rather, the claim is that the U.S. EPA has acted arbitrarily or capriciously in imposing conditions not required by state law. This is a matter of law, and in matters of law, the District of Columbia Circuit is at least as competent as we are.

### III. Transfer

We conclude, therefore, that jurisdiction does not lie in this Court but in the Court of Appeals for the District of Columbia Circuit.[8] Waste Management has asked us to transfer the case, rather than dismissing it, "in the interest of justice" pursuant to 28 U.S.C. § 1631. We agree that this is the best course. With the difficult jurisdictional issues involved here, Waste Management's filing in this Court was an "understandable mistake," and "[n]o purpose would be served in dismissing" the claim. *Five Flags Pipe Line Co. v. Department of Transportation*, 854 F.2d 1438, 1442 (D.C.Cir.1988).

### IV. Conclusion

For the reasons set forth above, and in the interest of justice, we transfer this case to the United States Court of Appeals for the District of Columbia Circuit. The Clerk of the Court is ordered to transfer the case file to that court ten days after the issuance of this opinion. It is so ordered.

---

8. The District of Columbia Circuit may decide that it also lacks jurisdiction, since Waste Management did not bring its challenge to the regulation within ninety days of promulgation. *See* 42 U.S.C. § 6976(a)(1). However, we will leave this question for resolution by the court of appeals.